JUDGE PRESKA

BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**08 CV 00551**

| | |
|---|---|
| SEATREK TRANS PTE LTD, | |
| Plaintiff, | 08 Civ. |
| v. | **VERIFIED COMPLAINT** |
| REGALINDO RESOURCES PTE LTD., | |
| Defendant. | |

Plaintiff SEATREK TRANS PTE LTD. ("Seatrek"), as Owner of the M/V STARETEC by its attorneys Blank Rome, LLP, complaining of the above-named Defendant REGALINDO RESOURCES PTE LTD. ("Regalindo"), alleges upon information and belief as follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2.    At all material times, Seatrek was and now is a foreign company organized and existing under the laws of Singapore and the owner of the M/V "Staretec" (the "Vessel").

3.     At all material times, Regalindo was and now is a corporation organized and existing under the laws of Singapore.

## THE BASIC FACTS

4.     Pursuant to a fixture agreement dated on or about November 21, 2007 (Exhibit 1 to the accompanying Rule B affidavit) Seatrek, as disponent owner, agreed to charter the Vessel to Regalindo at a daily "hire" or rental rate of $28,000, per day.

5.     Pursuant to the terms of the recap fixture a charter party was drawn up (Exhibit 2).  (the "Charter")

6.     The Charter provides for a "time charter period of a minimum of 12 months to about 14 months (about means 15 days plus/minus in [Regalindo's] opinion).

7.     The charter also is governed by English law and calls for Singapore arbitration.

8.     Pursuant to the terms of the Charter Seatrek provided Regalindo, through its brokers, notice of delivery of the Vessel. (Ex. 3).

9.     On or about December 27, 2007 Regalindo's brokers communicated to Seatrek's brokers Regalindo's alleged inability to use the Vessel (Ex. 3).

10.     Seatrek protested advising that the vessel was inter alia, awaiting Regalindo's "voyage instructions" at the port of delivery.

11.     Seatrek placed Regalindo on notice that it would accept the wrongful repudiation of the Charter by a deadline of January 4, 2008 (Ex. 4)

12.     Seatrek sent further notice advising of its acceptance of Regalindo's wrongful repudiation of the Charter with a two day deadline, reserving all of its rights to any claims arising therefrom.  (Ex. 5)

13.     Regalindo failed to respond and wrongfully repudiated the Charter.

14.     In the intervening period between the date of the fixture and the date of delivery of the Vessel the freight market had declined substantially.

15.     Seatrek re-chartered the Vessel for a time charter at a daily hire rate of $19,750 per day or $8,500 per day less than under the Charter.

16.     The Charter is subject to English law and Singapore arbitration.    This action is expressly filed without prejudice to that right of arbitration.

### COUNT I

### RULE B RELIEF

17.     Plaintiff repeats paragraphs 1 through 16 as if fully set forth herein.

18.     Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its attorneys' fees and arbitrators' fees which are routinely awarded in Singapore arbitration and no security for Plaintiff's claim has been posted by Defendant or anyone acting on its behalf to date.

19.     At best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| | | |
|---|---|---|
| A. | On the principal claim | $3,060,000 |
| B. | Estimated Recoverable English Lawyers and Arbitrators' Fees & "Costs" | $350,000 |
| C. | Interest over the course of 2 years at prime rate average of 6% per annum: | $367,200 |
| | **TOTAL**: | $3,777,200.00 |

20.    Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against Regalindo, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.    That since Regalindo cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Regalindo's tangible or intangible property or any other funds held by any garnishee, which are due and owing to Regalindo up to the amount of $3,777,200, to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C.    That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

D.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
       January 22, 2008

                        Respectfully submitted,
                        BLANK ROME, LLP
                        Attorneys for Plaintiff

                        By _____
                            Jeremy J.O. Harwood (JH 9012)
                            405 Lexington Avenue
                            New York, NY 10174
                            Tel.: (212) 885-5000

## VERIFICATION

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.    I am a member of the bar of this Honorable Court and of the firm of Blank Rome, LLP, attorneys for Plaintiff.

2.    I have read the foregoing Complaint and I believe the contents thereof are true.

3.    The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.    The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

<br>

_Jeremy J.O. Harwood_
Jeremy J.O. Harwood

Sworn to before me this
22nd day of January, 2008

_Notary Public_
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114406
Qualified in New York County
Commission Expires Aug. 16, 20.08

BLANK ROME, LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY  10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SEATREK TRANS PTE LTD,<br><br>Plaintiff<br><br>v.<br><br>REGALINDO RESOURCES PTE LTD.,<br><br>Defendant. | 08 Civ.<br><br>**AFFIDAVIT UNDER**<br>**SUPPLEMENTAL RULE B** |

STATE OF NEW YORK    )
                     : ss.:
COUNTY OF NEW YORK   )

JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

1.    I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the complaint and submit this affidavit in support of Plaintiff's request for the issuance of process of maritime attachment and garnishment of the property of defendant Regalindo Resources Pte, Ltd., a company organized and existing under the laws of Singapore, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

900200.00001/6610267v.1

2.    The defendant is not incorporated or registered to do business in this State.

3.    Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, the Transportation Tickler (2007 edition), telephone assistance in New York City, and the internet Yellow Pages.

4.    In our search, we did not find any listing or reference to defendant in this district or state.

5.    In the circumstances, I believe the defendant cannot be "found" within this district.

6.    I attach as Exhibit 1 hereto a copy of the fixture recap dated on or about November 21, 2007.

7.    I attach as Exhibit 2 hereto a copy of the Charter.

8.    I attach as Exhibits 3, 4 and 5 email exchanges between the parties and their brokers relating to defendant's repudiation of the Charter.

_____
Jeremy J.O. Harwood

Sworn to before me this
22nd day of January, 2008

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 2008

2

211107-YK016084                                         User: NS

  **To:** HC <arc@seatrek.com.sg>
 **From:** R.S. Platou Singapore
**Subject:** [YK] MV STARTEC - REGALINDO - C/P 21 NOV 2007
   **Date:** 21.11.07 12:50:39  (printed 04.01.08 10:53:38)
 **Status:**   Sent 21.11.07 12:50:3 HC <arc@seatrek.com.sg>


«Ref: 211107-YK016084 - R.S.Platou Singapore, Dry Cargo Chartering Department».

To      : SEATREK TRANS

Asifur / Yahya

Re: MV Staretec - Regalindo - CP 21 Nov 2007

Pleased to draw FINAL FIXTURE RECAP with C/P dated 21 Nov 2007 asf:

- ALL NEGO AND EVENTUAL FIXTURE TB KEPT PRIVATE AND CONFIDENTIAL

MV STARTEC
HONG KONG FLAG - BUILT 1978
DWT 44,710 ON 11.327M SSW
LOA 191.42M / BM 32.23M
GRT 27,031 / 15,899
GRAIN 60,173 CBM / BALE 54,030CBM
7 H/H - TYPE OF HATCHCOVERS:
NO.1 - MCGREGOR 3 - PANEL FOLDING TYPE
NO.2-7 - MCGREGOR PIGGY-BACK (SLIDING BELOW
ADJOINING HATCHCOVER THENCE MOVING IN SANDWICH:
3 BELOW 2 / 5 BELOW 4 / 7 BELOW 6)
[VSL AT ANY TIME COULD WORK MAX 4 WKBLE HOLDS]
HATCH SIZE:
NO 1 - 12.95 X 13.05 M
 2-7 - 12.95 X 26.23 M
TPC 53.20MT
VSL'S CONSTANT EXCL FW ABT 500MT
UNPUMPABLE ABT 300MT
ABT 11.5 KN ON ABT 28 MTS (180CST) + ABT 2.5 MTS MGO
IN PORT CONSUMPTION IDLE ABT 2.5MT MGO, WW ABT 4.5MT MGO
AT WINTER IDLE ABT 3MT MGO
WW ABT 5MT

MGO VESSEL CONSUMES MGO IN BAD WEATHER WHEN MANOEUVERING, HARBOUR
STEAMING,
IN RESTRICTED WATERS, NAVIGATING SHALLOW OR CONFINED WATERS, ENTERING
AND
SAILING PORTS, RIVERS AND WHILE SLOW STEAMING, HARBOUR STEAMING 1MT
GO/HR
WHILE MANOEUVERING. DETS ALL ABT WOG

- CLASS=CCS/ PNI= WOE
- REGISTRY OWS = STARTEC MARITIME INC
- IMO NO: 7713395

- VESSEL TO BE TRADED ONLY AS GEARLESS VESSEL.

- DISP. OWNERS: SEATREK TRANS, SINGAPORE

FOR

- ACCT REGALINDO RESOURCES PTE LTD SINGAPORE,

Exh. 1

- DELY ON DLOSP SP SPORE/JAPAN RANGE ATDNSHINC PIOO
- L/C 15 DEC 07 / 31 JAN 08 TB NARROWED DOWN 30 DAYS SPREAD
  BY THE END OF NOV.
- MIN 12 / ABT 14 MOS PERIOD T/C PERIOD ABT MEANS 15 DAYS PLUS/MINUS
  IN CHOPT

- TRADING EXCLUSIONS:
  =======================

- TRADING ALWAYS VIA/BETWEEN SPS SBS SAS SAFE PLACES ALWAYS SAFELY
AFLOAT AWIWL
   WITHIN CIS PACIFIC (NOT NORTH OF NAKHODKA) AND SINGAPORE (NOT EXCEED
MALACCA STRAIT)
   INCLUDING; N.KOREA, S.KOREA, CHINA, HONG KONG, TAIWAN,
PHILIPPINES,VIETNAM, THAILAND,
   MALAYSIA, SINGAPORE AND INDONESIA ONLY.
   FOR INDONESIA TRADING: ONLY SUMATERA, JAWA, KALIMANTAN AND SULAWESI,
BRINGKASI,UJUNG
   PANDANG PORTS TO BE ALLOWED. ALWAYS SAFELY AFLOAT AT ANY TIME OF TIDE,
ALWAYS ACCESSIBLE,
   ALWAYS WITHIN I.W.L, ICE FREE PORTS, VSL NEITHER TO FORCE ICE NOR TO
FOLLOW ICE BREAKERS,
   ALWAYS WITHIN WAR RISK TRADING WARRANTIES AND EXCLUDING WAR AND
WARLIKE ZONES WHICH
   DECLARED BY OWNERS' WAR RISK UNDERWRITERS FROM TIME TO TIME AND
COUNTRIES WHICH TIME
   TO TIME MAY BE EXCLUDED BY GOVERNING AUTHORITY OF THE VESSEL'S FLAG,
NO DIRECT SAILING
   BETWEEN PRC AND TAIWAN AND NORTH KOREA/SOUTH KOREA OR VICE VERSA.

   VESSEL IS NOT ALLOWED TO TRADE TO THE PORTS/AREAS WHICH ARE PROHIBITED
FROM TRADING
   BY THE UNITED NATIONS AND/OR INTERNATIONAL ORGANIZATION OF THE U.N.IF
THE WAR/WARLIKE
   ZONES HAS BEEN DECLARED BY VESSEL'S UNDERWRITERS AND/OR P AND I CLUB
AFTER CARGO HAS
   ALREADY BEEN LOADED ON BOARD, SUBSEQUENTLY, THE WAR RISK CLAUSE OF
CONWARTIME 1993 TO
   APPLY AND CHARTERERS ARE FULLY RESPONSIBLE TO PAY FOR ALL ADDITIONAL
WAR RISK PREMIUM
   UPON DEMAND OF VESSEL'S UNDERWRITERS AND/OR P AND I CLUB. IN SUCH CASE,
OWNERS/MASTER
   HAVE THE OPTION OF LEAVING THE PORT IMMEDIATELY WITHOUT CONSENT.
CHARTERERS AND
   OWNERS/MASTER SHALL NOT BE HELD RESPONSIBLE FOR ANY/ALL CONSEQUENCES/
LOSSES/
   EXPENSES RESULTED FROM THE ACTIONS TAKEN BY OWNERS/MASTER.

- CARGO EXCLUSIONS:
   ONLY BULK COAL, CLINKER, IRON ORE, BLK SLAG, GYPSUM, BAUXITE ALLOWED

- REDEL DLOSP 1SP WITHIN TRADING LIMITS.
- HIRE USD28,000 DAILY INCLOT.
- HIRE PAYABLE EVERY 15 DAYS IN ADVANCE. 1ST HIRE ALONGWITH COST
  OF BOD VALUE TO BE PAID WITHIN 2 BANKG DAYS UPON DELIVERY.
- BOD AS ON BOARD (RVTG WHEN OWS NARROW 30DYS SPREAD LAYCAN)
  BOR ABT SAME QTTIES AS ON DELIVERY
  PRICES BENDS TO BE ADVISED BY OWNS.
- CHRTS OPTION TO DEDUCT VALUE OF BOR FROM LAST SUFFICIENT HIRE(S)
- OWNRS/MASTER TO DISCHARGE/DELIVER CARGO AGAINST CHRTS SINGLE
  LOI, SIGNED BY CHRTS COMMERCIAL DIRECTOR ONLY, CO'S LETTER HEADED
  PAPER IN OWNRS PNI CLUB WORDINGS, IN THE EVENT THAT ORIGINAL
  BS/L ARE NOT AVAILABLE AT   DISCHARGE PORT.
- ILOHC USD 4,000 LSUM ON REDELY

- INTERMEDIATE HOLD-CLEANING USD2,100 PER VOYAGE, OWS ARE
  NOT RESPONSIBLE IN CASE VSL FAILS TO PASS HOLD INSPECTION.
- C/E/V USD 1,200 PMPR BSS 30 DAYS
- VSL NOT TO BE RELET TO THIRD PARTIES / OTHERS, ON TIME CHARTER TRIP OR

  TIME CHARTER PERIOD
- ARBITRATION IN SPORE - ENGLISH LAW TO APPLY.
- COMMS: 2.5% TTL BROKERAGE INCL ADC TO MOTION MARINE CO LTD. END
  + 1.25% RS PLATOU
- OTHERWISE LOGICAL AMENDMENTS/ALTERATIONS BASED ON MV STARTEC CP DATED
  12 SEP 2007 EXCEPT FOLL:

- CLAUSE 5 L58:REPLACE 5 WITH 15
- CLAUSE 56    :AS PER C/P AND HOW MAIN TERMS AGREED
- CLAUSE 73    :INSERT AS ADDITION APPROX 15 DAYS DELY NOTICE

END

TRUST ABOVE IN ORDER AND WISH SMOOTH OPERATIONS TO ALL PARTIES

Best Regards, Yahya Karahasan

R.S. Platou (Asia) Pte. Ltd.
TEL    : + 65 6336 8733
FAX    : + 65 6336 8741
MOB    : + 65 9675 8640
EMAIL : dry@platou.com.sg
WEB    : www.platou.com

# Time Charter

### GOVERNMENT FORM
*Approved by the New York Produce Exchange*
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party**, made and concluded in ..........*Singapore*..........................*21st*..... day of .........*November*......*2007*..19....

2 Between ...........*Seatrek Trans Pte Ltd as disponent* .................................................................................................

3 Owners of the good ...................................................... Steamship/Motorship .................*STARTEC (See Clause 77)* ............ of ............................

4 of.....................tons gross register, and of........................tons net register, having engines of ..................................................indicated horse power

5 and with hull, machinery and equipment in a thoroughly efficient state, and classed

6 at.....................of about....................cubic feet bale capacity, and about.......................tons of 2240 lbs.

7 deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity,

8 allowing a minimum of fifty tons) on a draft of.......................feet.....................inches on .....................Summer freeboard, inclusive of permanent bunkers,

9 which are of the capacity of about .................................................................tons of fuel, and capable of steaming, fully laden, under good weather

10 conditions about ......................................knots on a consumption of about.................................tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,

11 now .....................................................................................................................................................................................................

12 .................................................................... and ....*Regalindo Resources Pte Ltd* ..................... Charterers of the City of ....*Singapore* ...................

13 **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14 about *a time charter period of minimum 12 months to about 14 months (about means 15 days plus/minus in Charterers' option),*

15 *Trading via safe port(s), safe berth(s), safe anchorage(s), always within Institute Warranty Limits within CIS Pacific (not North of Nakhodka)/People's Republic of China/South Korea - Indonesia/Singapore (not exceed Malacca Strait) range (See Clause 48)* within below mentioned trading limits.

16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17 the fulfillment of this Charter Party.

18 Vessel to be placed at the disposal of the Charterers, at *on dropping last outward sea pilot safe port Singapore/Japan range any time, day or*

19 *night, Sundays and holidays included, port in Owners' option* .................................................................................................................................

20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6), as

21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery to be

22 ready to receive *lawful* cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the winches at one and the same

24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchan-

25 dise, including petroleum or its products, in proper containers, excluding

26 (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,

27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North

28 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or

29 Mexico, and/or South America and/or Europe

30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between

31 October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,

32 ......................................................................................................................................................................................................

33 ......................................................................................................................................................................................................

34 ......................................................................................................................................................................................................

35 as the Charterers or their Agents shall direct, on the following conditions:

36 1. That the Owners shall provide and pay for all provisions, *drinking water,* wages and consular shipping and discharging fees of the Crew; *all garbage removal but compulsory garbage removal to be for Charterers' account) and launch hire for crew purpose with all certificate necessary to comply with current requirements at vessel's classification society and/or flag state* shall pay for the

37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including boiler water and maintain her class and keep

38 the vessel in a thoroughly efficient state in hull, machinery and equipment for and during the service.

39 2. That *whilst on hire* the Charterers shall provide and pay for all the fuel except *lubricating oil and galley* as otherwise agreed, Port Charges, *canal charges* Pilotages, Agencies, Commissions,

40 Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated, but when the vessel puts into

41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42 illness of the crew to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel has been on charter for a continuous period

44 of six months or more.

45 Charterers are to provide necessary dunnage and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47 for dunnage, *lashing materials* they making good any damage thereto.

48 3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on

49 board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than.........................tons and not more than........

50 .......................................tons and to be re-delivered with not less than..........................................tons and not more than.........................................tons.

51 4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of ....*USD28,000 daily including overtime payable every 15*

52 *days in advance* ............................................................ United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and

*Exh. 2*

53    stores, on ................................................................... summer freeboard, per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at

54    and after the same rate for any part of a *day* month; hire to continue until the hour of the day *and time* of her re-delivery in like good order and condition, ordinary

55    wear and tear excepted, to the Owners (unless lost) at *on dropping last outward sea pilot one safe port within trading limits*

56    ................................................................... unless otherwise mutually agreed. Charterers are to give Owners not less than *(See Clause 73)* days

57    notice of vessels expected date of re-delivery, and probable port.

58        5.    Payment of said hire to be made *to Owners' bank* in New York in cash in United States Currency, semi-monthly *15 days* in advance *for first hire*, and for the last half month *15 days* or

59    part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60    due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61    hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62    terers, *by giving minimum 2 clear working days written notice to Charterers of such intention to withdraw* without prejudice to any claim they (the Owners) may otherwise have on the Charterers *and shall have no responsibility for any consequences thereof, in respect of which Charterers hereby indemnify the Owners and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for Owners' account.* Time to count from 7 a.m. on the working day

63    following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m., but if required by Charterers, they

64    to have the privilege of using vessel at once, such time used to count as hire.

65        Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain *and Owners*, by the Charterers or their Agents, subject

66    to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67    of such advances.

68        6.    That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place that Charterers or their Agents may

69    direct, provided the vessel can safely lie always afloat at any time of tide, except at such places where it is customary for similar size vessels to safely

70    lie aground.

71        7.    That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72    accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,

73    tackle, apparel, furniture, provisions, stores and fuel. Charterers have the privilege of passengers as far as accommodations allow, Charterers

74    paying Owners ................................................................... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are

75    incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.

76        8.    That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77    boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78    agency; and Charterers are to load, stow, and trim, *discharge, dunnage, draft survey/tally as applicable both ends* the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for

79    cargo as presented, in conformity with Mate's or Tally-Clerk's receipts. *See Clause 45*

80        9.    That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81    receiving particulars of the complaint, investigate the same, and, if necessary *and practicable*, make a change in the appointments.

82        10.    That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel *provided accomodation available and life boat capacity permits and the supercargo and Charterers provide Owners with a duly signed Letter of Indemnity in Owners' PNI Club wording* and see that voyages are prosecuted

83    with the utmost despatch. He is to be furnished with free accommodation, *be available* and same fare as provided for Captain's table, Charterers paying at the

84    rate of US$10.00 per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85    Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling.

86        11.    That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87    Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88    terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel *deck and engine* and distance run and the con-

89    sumption of fuel.

90        12.    That the Captain shall use diligence in caring for the *natural* ventilation of the cargo.

91        13.    That the Charterers shall have the option of continuing this charter for a further period of ...................................................................

92    ...................................................................

93    on giving written notice thereof to the Owners or their Agents ................................................................... days previous to the expiration of the first-named term, or any declared option.

94        14.    That if required by Charterers, time not to commence before *15th December 2007 00:01 hours local time* and should vessel

95    not have given written notice of readiness on or before ....*31st January 2008*................................ but not later than *1200 hours local time* 4 p.m. Charterers or

96    their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness. *Owners to narrow down the laycan to 30 days spread by end November 2007.*

97        .15.    That in the event of the loss of time from deficiency *and/or default and/or strike or sabotage or deficiency of crew* of men or stores, fire, breakdown or damages to hull, machinery or equipment,*unless caused by Charterers and/or their agents and/or their servants.*

98    grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99    preventing the full working of the vessel, the payment of hire shall cease for the *actual* time thereby lost; and if upon the voyage the speed be reduced by

00    defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

01    thereof, and all extra *directly proven* expenses shall be deducted from the hire *and bunkers consumed during off hire shall be agreed as delivery and redelivery.*

02        16.    That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

03    returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

04    Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

05        The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

06    purpose of saving life and property.

07        17.    That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York,

08    one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109 ~~the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~ *See Clause 39*

110 18. That the Owners shall have a lien upon all cargoes, and all sub-freights for any amounts due under this Charter, including General Aver-
111 age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess
112 deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which
113 might have priority over the title and interest of the owners in the vessel.

114 19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and
115 Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules ~~1 to 15, inclusive, 17 to 22, inclusive, and Rule F of~~
116 York-Antwerp Rules ~~1924~~ *1974 as amended 1990 in London,* ~~at such port or place in the United States as may be selected by the carrier, and as to~~
~~matters not provided for by these~~

117 ~~Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~
118 ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~
119 ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~
120 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such each deposit as the carrier~~
121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~
122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~
123 ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~
124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~
125 ~~United States money.~~

126 In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,
127 whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the
128 goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,
129 losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the
130 goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or
131 ships belonged to strangers.

132 Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133 20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the
134 cost of replacing same, to be allowed by Owners.

135 ~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~
136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~
137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138 ......................................................................................................................................................

139 ......................................................................................................................................................

140 22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks) capable of handling *See Clause 77 and 96* ~~lifts up to three~~
~~tons; also~~

.41 ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~
.42 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *lights as on board but Owners*
*to only replace existing lights if they are not working* ~~lanterns and oil for~~

43 night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense. The
.44 Charterers to have the use of any gear on board the vessel.

45 23. Vessel to work night and day, if required by Charterers, and all winches to be at Charterers' disposal during loading and discharging;
46 ~~steamer to provide one winchman per hatch to work winches day and night, as required. Charterers agreeing to pay officers, engineers, winchmen,~~
47 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~
48 ~~port, or labor unions, prevent crew from driving winches,~~ shore Winchmen to be paid by Charterers. ~~In the event of a disabled winch or winches, or~~
49 ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~
50 ~~thereby.~~ *No winchmen from the crew.*

51 24. It is also mutually agreed that this Charter is subject to all the terms and provisions of *English Law* and all the exemptions from liability contained
52 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;
53 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both
54 of which are to be included in all bills of lading issued hereunder:

55 U. S. A. Clause Paramount

56 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April
57 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of
58 any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading
59 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

60 Both-to-Blame Collision Clause

61 If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the
62 Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried
63 hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss
64 or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-
65 carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her
66 owners as part of their claim against the carrying ship or carrier.

67 25. The vessel shall not be required to enter any ice-bound port, or any port where lights or light-ships have been or are about to be with-
68 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the
69 port or to get out after having completed loading or discharging. *Vessel not to break ice nor to follow ice breakers.*

70 26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
71 navigation of the vessel, *including acts of pilots of vessel and acts of tug boats,* insurance, crew, and all other matters, same as when trading for their
own account.

72 27. A commission of ~~2 1/2~~ *3.75* per cent is payable by the Vessel and Owners to

73 *R.S Platou (Asia) Pte Ltd for distribution* .................................................................................................................

74 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

75 ~~28. An address commission of 2 1/2 per cent payable to.................................................................on the hire earned and paid under this Charter.~~

*Clauses 29 to 97 Inclusive as attached hereto, together with Conwartime 1993 War Risk Clause, New Both to Blame Collision Clause and New Jason Clause, Hague/Visby Rules are deemed to be fully incorporated in this Charter Party.*

*Owners*                                      *Charterers*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD CHARTER PARTY DATED 21ST NOVEMBER 2007

### Clause 29

In the event of any loss of time either in port or at sea, deviation from the course of the voyage or putting back while on voyage, caused by sickness of or an accident to Master/ Officers/Crew, or caused by stowaway, refugee or any persons travelling by request of Charterers or by reason of refusal of Master or Officers or Crew to perform their duties or of an accident or break-down to vessel or dry-docking or periodical survey, or salvage or any alleged pollution damage, hire shall be suspended from the time of inefficiency in port or at sea, deviation or putting back until the vessel is again efficient in equidistant position or regain the line of voyage whichever is the shorter distance for a port where the vessel is originally destined for and voyage resumed therefrom, and all bunkers consumed during such period of suspension shall be for Owner's account.

### Clause 30

The vessel to hold and keep valid deratting exemption certificate through the Charter period. If not then, in such case, cost and time of fumigation, if necessary, to be for Owner's account. If because of cargo or vessel having been sent to an infected port or by Charterers, cost and time to be for Charterers' account, including shore accommodation expenses for crew, if required.

### Clause 31

On and off-hire surveys to ascertain the bunker quantities shall be held jointly between Charterers and Owners by one independent surveyor to be mutually agreed. On-hire survey to be held in Owner's time subject to any time actually lost at first load port or delivery port if survey affected Charterers' operation, and off-hire survey to be held in Charterers' time at last discharge port before re-delivery. Expenses for on/off-hire survey to be equally shared between Owners and Charterers.

### Clause 32

Stevedores although appointed and paid by the respective voyage Charterers under this Charter Party, but to work under the supervision of the Master. Should any damage be caused to the vessel or her fittings by the stevedores, the Master has to try to let stevedores repair such damage and try to settle the matter directly with them.

The Charterers shall not be responsible for any damage caused by stevedores to the vessel unless the Master obtains written acknowledgement of the damage from the concerned stevedores and immediately notifies the Charterers or their agents of such damage within 24 hours from the occurrence or latest prior to departure from the port of occurrence. In case of refusal of stevedores to acknowledge responsibility, independent surveyor to be appointed and cost to be paid by the party found to be wrong.

## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

The Charterers shall have the liberty to redeliver the vessel without repairing the damages for which the Charterers are responsible, as long as the same does not affect the vessel's seaworthiness and normal working capacity, but the Charterers undertake to reimburse costs of repair against the production of repair bills by repairers or dockyard, unless otherwise agreed. Any damages affecting seaworthiness or normal working capability and/or class should be repaired immediately, in order for the vessel to be able to perform at Charterers' time and expense.

### Clause 33

BIMCO Conwartime 1993, New Jason Clause, New Both-to-Blame Collision Clause, General Clause Paramount, P & I Bunkering Clause, The International Convention for the Unification of Certain Rules of Law relating to the Bill of Lading signed at Brussels on 25th August 1924, are deemed to form part of this Charter Party and incorporated to the Bill of Lading issued under this Charter Party.

### Clause 34

First hire along with cost of bunkers on delivery value to be paid within 2 banking days upon delivery. Charterers are entitled to deduct Owners' expenses but maximum USD 500 per each calling port and Charterers' option to deduct value of bunkers on redelivery from last sufficient hire payments.

### Clause 35

The vessel to be in possession of the necessary certificates to comply with regulations of vessel's classification society and/or flag state. The vessel to keep valid certificates required by the vessel's classification society and/or flag state during the whole of this Charter period.

### Clause 36

Charterers guarantee that the cargo will be loaded, stowed and discharged strictly in accordance with the IMO regulations prescribed.

### Clause 37

Normal quarantine time and expenses for the vessel's entering port shall be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness etc., of Master, Officers and Crew shall be for Owner's account. Further the vessel shall be in possession of valid certificate necessary to prepare radio pratique at port or ports where radio pratique is available.



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD CHARTER PARTY DATED 21ST NOVEMBER 2007

### Clause 38

Any delay, expenses and/or fines incurred on account of smuggling, if caused by Charterers' Agents, Shippers and/or Consignees, are to be for Charterers' account, but if caused by Officers and/or the crew and/or employee, to be for Owner's account.

### Clause 39

Any dispute if arising from this Charter Party to be settled by Arbitration in Singapore and English Law to apply. Each party to appoint an arbitrator and should they be unable to compromise, the decision of an umpire selected by them to be final. If one party fails appointment of an arbitrator within seven clear days after notice of appointment of arbitrator given by the other party, the party who has appointed an arbitrator may appoint that arbitrator to act as sole arbitrator. The award of the sole arbitrator to be final. Arbitration cost to be for account of the losing party or else stated by arbitrator(s). Arbitrator(s) should be commercial shipping man (men) LMAA clause to apply for amounts up to USD 50,000.

### Clause 40

Owners guarantee that vessel's hatch covers are to be weather-tight all throughout this Charter period. Should surveyors find hatch covers in improper condition, vessel to be placed off-hire from the time she is rejected until she is fully accepted.

Hatches to be carefully tended by crew to prevent leakage. Crew to undertake first opening and last closing of hatches weather-permitting when/where required by Charterers without waiting stevedores. However, if not permitted by local regulations/authorities, shore labour to be employed at Charterers' expenses and time.

### Clause 41

With the view to protect Owners and Charterers against possible claim for cargo damages, Owners option to appoint inspectors nominated by their PNI Club to perform cargo condition survey concurrently with load/discharge of cargoes which are potentially liable to cargo claim. Cost for such survey to be for Owners expense/cost.

Vessel, not to trade to countries/places where UN sanction are in force and all war and/or war like zones, orders of Owners war risk underwriters are always to be followed. Basic war risk insurance to be for Owners account. Any additional premium for hull and machinery and officers/crew for trading to a restricted area, including blocking and trapping insurance and crew war bonus to be for Charterers account and vessel to remain on full hire.

### Clause 42

The Owners guarantee that the vessel shall be covered by P & I Club.



### RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD CHARTER PARTY DATED 21ST NOVEMBER 2007

Owner's P & I Club: The West Of England Ship Owners Mutual Insurance Association (Luxembourg).

**Clause 43**

a) If the Owners are required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country or state in performance of this Charter Party, the Owners shall satisfy such requirement at the Owner's sole expense, unless this pollution arose by reason of Charterers' negligence.

b) The Charterers shall be under no responsibility for all consequences (including loss of time) or oil or other pollution damage and failure or inability of the Owners to do so provided for above and any loss of time incurred thereby to be off-hire unless this pollution arose by reason of Charterers' negligence.

c) The Owners shall indemnify the Charterers harmless against all consequences (including fines, if any, imposed to Charterers) or oil or other pollution damage and any failure or inability of the Owners to do so provided for in preceding paragraph (a)

**Clause 44**

BIMCO Standard ISM Clause to be applied during this Charter period.

**Clause 45**

a) Charterers or their agents are hereby authorised by Owners to sign/release Bills of Lading but Bills of Lading always to be in strict conformity with Mate's receipt.

In the event that original bills of lading are not available at discharge port, Owners /Master to discharge/deliver the cargo against Charterers' single Letter of Indemnity which to be signed by Charterers' commercial director only on company's letter headed paper in Owners' PNI club wording. Copy of Bills of Lading to be attached to the Letter of Indemnity.

b) All Bills of Lading shall be without prejudice to this Charter Party and Charterers shall indemnify and keep the Owners always harmless against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any Bills of Lading signed by this Charterers.

c) No deck cargo.

**Clause 46**

Charterers shall not be allowed to trade for whatever purpose directly from South Korea to North Korea or vice versa and mainland China to Taiwan or vice versa unless having called at another third country port.



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

### Clause 47

With mutual understanding from both Owners and Charterers or vessel is not I.T.F. fitted. In the event of loss of time due to boycott, strikes or similar action of the vessel by reason of the vessel's flag or the terms and conditions of which members of the crew were employed, the payment of hire and crew's overtime shall cease for the time lost thereby and any extra expenses resulting from such reason to be for Owner's account.

### Clause 48   Trading Exclusions

Trading via safe port(s), safe berth(s), safe anchorage(s), safe place(s), always afloat, always within Institute Warranty Limits (I.W.L) within CIS pacific but (not north of Nakhodka) and Singapore (not to exceed Malacca Strait) including North Korea, South Korea, China, Hong Kong, Taiwan, Philippines, Vietnam, Thailand, Malaysia, Singapore and Indonesia only.

For Indonesia trading - only Sumatra, Java and Kalimantan and Sulawesi, Biringkasi, Ujung Pandang ports to be allowed. Always safely afloat at any time of tide, always accessible, always within I.W.L, ice free ports, vessel neither to force ice nor to follow ice breakers, always within war risk trading warranties and excluding war and warlike zones which declared by Owners' war risk underwriters from time to time and countries which time to time may be excluded by governing authority of the vessel's flag.

No direct sailing between PRC and Taiwan and North Korea/South Korea or vice versa.

Vessel is not allowed to trade to the ports/areas which are prohibited from trading by the United Nations and/or International Organization of the UN.

If the war/warlike zones has been declared by vessel's underwriters and/or P and I Club after cargo has already been loaded on board, subsequently, the war risk Clause of Conwartime 1993 to apply and Charterers are fully responsible to pay for all additional war risk premium upon demand of vessel's underwriters and/or P and I Club. In such case, Owners/Master have the option of leaving the port immediately without consent. Charterers and Owners/Master shall not be held responsible for any/all consequences / losses /expenses resulted from the actions taken by Owners/Master.

### Clause 49

Watchmen to cargo to be for Charterers' account, however, compulsory customary watchmen whether to cargo or not to be for Charterers' account.

### Clause 50

Charterers are to pay all local, state, national taxes and/or dues assessed on the vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD CHARTER PARTY DATED 21ST NOVEMBER 2007

freights and/or sub-freights and/or hire (excluding taxes levied by the country of the flag of the vessel).

### Clause 51

Owners guarantee that under present ownership the vessel and/or any other vessels under same ownership has not traded Israel and to the best of their knowledge, not blacklisted by the Arabian countries.

### Clause 52

Owners to arrange at their expenses that Master, Officers and Crew of the vessel hold valid vaccination certificates against yellow fever, small pox, cholera certificates during the Charter.

### Clause 53

The Master shall supervise the stowage of the cargo thoroughly and let one of his Officers supervise all loading, handling, stowage and discharge of the cargo, he is to furnish the Charterers with stowage plans as well as tally slips and documents if available.

### Clause 54

Owners guarantee vessel is single deck self-trimming bulk carrier/bridge and engine room is aft.

### Clause 55

Charterers and/or their agent/stevedores shall at all times cooperate fully with Master for gear operations, Charterers to carry out gear operations to entire satisfaction of Master.

### Clause 56

Vessel to be re-delivered with clean swept holds but Charterers to have the option to re-deliver the vessel without cleaning holds. In lieu of hold cleaning USD 4,000 in lumpsum to be paid by Charterers upon re-delivery including removal/disposal of lashing materials/dunnage/debris. Intermediate hold cleaning USD 2,100 per voyage, Owners are not responsible in case vessel fails to pass hold inspection.

Charterers to pay Owners USD 1,200 per month or pro-rata basis 30 days, for all entertainment, victualling and cable charges.

## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

**Clause 57**

Charterers have the option of cancelling this Charter Party if war breaks out between any two or more of the following countries: U.S.A., Great Britain, Japan, France, C.I .S., People" Republic of China, Panama, Greece and Korea.

**Clause 58**

Cargo claims to be settled according to the Inter-Club New York Produce Exchange Agreement, as amended in May 1984, and latest amendments thereto.

**Clause 59**

Charterers have the benefit of any return insurance premium received by Owners from Underwriters (as and when received from Underwriters) by reason of the vessel being in port for a minimum period of 30 days provided the vessel is on-hire.

**Clause 60 Cargo Exclusion**

Only bulk coal, clinker, iron ore, bulk slag, gypsum and bauxite allowed.

**Clause 61**

Owners confirm vessel will not be sold during currency of this Charter Party.

**Clause 62**

Owners guarantee vessels tank top is flat and suitable for grab discharging.

**Clause 63**   Deleted

**Clause 64**

Vessel's all equipment shall comply with the regulations of the vessel's classification society and Owners are to ensure that vessel is at all times in possession of valid up-to-date certificates of efficiency of all equipment to comply with such regulations. If stevedores, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owner's agents to comply with aforementioned regulations or because vessel is not in possession of such valid and up-to-date certificates of efficiency then Charterers may suspend hire for time actually thereby lost.

**Clause 65 Deleted.**



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

**Clause 66**

Should the vessel be captured or seized or arrested by any authority or by any legal process during the currency of this Charter Party, the payment of hire shall be suspended until the time of her release. Any expenses incurred by and/or during the above capture or seizure or detention or arrest shall be for Owner's account, unless such capture or seizure or detention or arrest is occasioned by any personal act or omission or default of Charterers or their agents and/or by cargoes carried on the vessel.

**Clause 67** BIMCO ISPS Clause to apply during this Charter period.

**Clause 68** Deleted.

**Clause 69**

### BIMCO DOUBLE BANKING CLAUSE:

a) Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place or transshipment, loading and discharging of cargo and/or bunkering.

b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this Clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

d) The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**Clause 70**

It is mutually understood that the expression 'customary assistance' implies that the Master and the crew shall without the compensation render all and every service using all strength and ability for the advantage of Charterers in like good order as if this would be for his original Owners, provided such assistance does not contradict rules of the port or labour unions.

1) Supervision of loading and/or discharging



### RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD CHARTER PARTY DATED 21ST NOVEMBER 2007

2) Maintaining power while loading and/or discharging
3) Shifting ship during loading and/or discharging, and shifting between berths.
4) Berthing and un-berthing.
5) Bunkering, ballasting and deballasting.

**Clause 71**

Before delivery Owners undertake to have ship's holds cleaned and free from loose rust and rust scaling and in every respect ready to safely load and carry the intended cargo to the satisfaction of the relevant surveyors. Should the vessel not be approved by the surveyors then the vessel to be placed off-hire from failure of inspections until vessel is fully accepted and any directly related expenses thereof to be for Owners' account.

**Clause 72** Charterers to pay hire promptly on the due date.

**Clause 73**

Owners to tender notice of delivery on fixing followed by 15/7/5/3/2/1 days notices and Charterers to tender 15/10 days approximate notice and 7/5/3/2/1 days definite notice of redelivery to Owners.

**Clause 74**

If vessel is placed off-hire more than 30 consecutive days, Charterers have the right to cancel the vessel, provided no cargo on-board, except off-hire for customary dry-dock.

**Clause 75** No dry-docking during this Charter period except in case of emergency.

**Clause 76**

Charterers agree to have their agents attend vessel's customary minor Owner's matters, such as crew mail and communication between Owners and vessel without charges as far as agency tariff permit. However, actual expenses to be paid by Owners, if any. Should there be any extraordinary matters, such as crew repatriation, hospitalization, dry-docking, general average, repair, major stores, etc., Charterers will agree that the Owners appoint the Charterers' agents as the Owner's agents paying actual expenses as mutually agreed between Owners and the Charterers' agents, if the Owners are unable to arrange their agents.

If requested by Owners, Charterers shall pay for Owner's expenses to local agents directly, while settlement of actual expense shall be made with Owners on last hires.

**RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
CHARTER PARTY DATED 21ST NOVEMBER 2007**

**Clause 77 - VESSEL'S DESCRIPTION (ALL DETAILS ABOUT WITHOUT
GUARANTEE)**

MV STARTEC
HONG KONG FLAG – BUILT 1978
DWT 44710 ON 11.327 M SSW
LOA 191.42M/BM 32.23M
GRT 27,031/15,899
GRAIN 60,173 CBM/BALE 54,030 CBM
7 H/H – TYPE OF HATHCOVERS:
NO.1 – MCGREGOR 3 PANEL FOLDING TYPE
NO.2 – 7 – MCGREGOR PIGGY BACK (SLIDING BELOW ADJOINING
HATCHCOVER THENCE MOVING IN SANDWICH:
3 BELOW 2 / 5 BELOW 4 / 7 BELOW 6)
[VSL AT ANY TIME COULD WORK MAX 4 WKBLE HOLDS]
TPC 53.20 MT
CRANES 4 X 12 MT (BUT VESSEL TO BE TREATED AS GEARLESS)
VSL'S CONSTANT EXCL FW ABT 500 MT
UNPUMPABLE ABT 300 MT
ABT 11.5KTS ON ABT 28MTS IFO (180 CST) PLUS ABT 2.5 MT MGO
IN PORT CONSUMPTION IDLE ABT 2.5MT MGO/WW ABT 4.5MT MGO
AT WINTER IDLE ABT 3.0MT MGO/WW 5.0MT MGO.
VESSEL CONSUMES MGO IN BAD WEATHER WHEN MANOEUVERING,
HARBOUR STEAMING, IN RESTRICTED WATERS, NAVIGATING SHALLOW OR
CONFINED WATERS, ENTERING AND SAILING PORTS, RIVERS AND WHILE
SLOW    STEAMING,    HARBOUR    STEAMING    1MT    GO/HR    WHILE
MANOEUVERING.
DETS ALL ABT WOG.
CLASS – CCS/ PNI- WOE
REGISTRY OWS - STARTEC MARITIME INC
CP OWS: GUDAMI SINGAPORE
IMO NO: 7713395

**Clause 78**

Bunkers on delivery as on board, estimated quantities would be advised by Owners when
narrowing laycan to 30 days spread.

Bunkers on redelivery about same quantities as on delivery. Prices both ends to be
agreed.

Owners to have the option of supplying bunkers to the vessel during the currency of this
Charter provided the same does not interfere with the Charterers' itinerary and operations
and providing Charterers prior approval has been given which not to be unreasonably
withheld.

## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

### Clause 79

Hire payments to be made by Telegraphic Transfer to:

Beneficiary Bank
THE HONGKONG & SHANGHAI BANKING CORPORATION LIMITED
Address of branch
21 Collyer Quay #14-01 HSBC Building
Singapore 049320.
SWIFT CODE : HSBCSGSG
Beneficiary SEATREK TRANS PTE LTD
Account number ACU 260-579503-178

### Clause 80

Vessel to be always left in seaworthy trim to the Master's satisfaction during sailing and/or shifting between all berths and ports. If by reason of complying to Charterers' request and required special trimming to achieve seaworthy trim, to be for Charterers' account.

### Clause 81

Vessel not to be ordered nor to be bound to enter:

a) Any places where fever or epidemics are prevalent or to which the Master, Officers and Crew by law are not bound to follow the vessel.

b) Any ice-bound, or any other place where lights, lightships, marks and buoys are or are likely to be withdrawn by reason of ice, or any other reason whatsoever, on the vessel's arrival or where there is risk that ordinarily the vessel will not be able on account of ice to reach the place or to get out after having completed loading or discharging. The vessel not to be obliged to force ice. If on account the Master considers it dangerous to remain at the loading or discharging place for fear of vessel being frozen in and/or damaged, he has liberty to sail to a convenient open place and await Charterers' fresh instruction. Unforeseen detention through any of the above causes to be for Charterers' account. In case vessel has to seek refuge or alternative safe anchorage due to bad weather, vessel to remain on-hire.

### Clause 82

Vessel is a bulk carrier with single deck. It is Charterers' decision and responsibility for where/how to load bulk cargo. Master only responsible for the safety of vessel. Any special trimming required for loading and extra labour/equipment needed for discharging will be for Charterers' account and responsibility.



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

Vessel to be suitable for grab discharge (grabs to be provided by Charterers) during this Charter Party and no cargo to be loaded in places inaccessible to grabs or in deep tanks

Charterers to have the privilege of using bulldozers in vessel's holds. However, unit weight of bulldozers will not exceed vessel's tank-top strength.

**Clause 83** All references to times are understood to be in G.MT.

**Clause 84** Deleted.

**Clause 85** Deleted.

**Clause 86**

Charterers confirm vessel will be entered with a reputable Charterers' P & I Club throughout the duration of the Charter.

**Clause 87**

Conwartime 1993 War Risk Clause, New Both-to-Blame Collision Clause and New Jason Clause, Hague/Visby Rules are deemed to be fully incorporated in this Charter Party.

**Clause 88 War Cancellation**

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries: Japan, P. R. of China, Korea, either the Owners or the Charterers may cancel this Charter Party. Whereupon the Charterers shall re-deliver the vessel to the Owners in accordance with clause 10, if she has cargo on board, after discharge thereof at destination, or if debarred under this clause from reaching or entering it at a near open and safe port as directed by the Owners, or if she has no cargo on board, at the port at which she then is, or if at sea, at a near open port as directed by the Owners. In all cases hire shall continue to be paid in accordance with clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until re-delivery (Also see clause 57).

**Clause 89**

Neither the Charterers nor their agents shall permit the issue of any Bills of Lading (whether or not signed on behalf of the Owners or on the Charterers' behalf of any sub-Charterers) incorporating where not compulsorily applicable the Hamburg Rules or any legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague-Visby Rules. The Charterers shall indemnify the Owners against any liability, loss or damage, which may result from any breach of the forgoing provision of the clause. No liner Bills or Way Bills of Lading and no through transshipment or combined transport Bills of Lading to be issued.



## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

**Clause 90**

General Average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, and settled in US currency. The Charterers shall procure that all Bills of Lading issued under the currency of the Charter Party will contain a provision to the effect that General Average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990 and will include the 'New Jason Clause' as per the clause 93 of this Charter Party. Time Charter hire shall not contribute to General Average.

**Clause 91**

The Owners shall have a lien upon all cargoes and all sub-freight and/or sub-hire for any amounts due under this Charter Party, including General Average contributions, and the Charterers shall have a lien on the vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once.

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owner's time.

**Clause 92 New Both to Blame Collision Clause**

If the liability for any collision which the vessel is involved while performing this Bill of Lading fails to be determined in accordance with the laws of the United States of America, the following clause shall apply: -

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried here under will indemnify the carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other non-carrying ship or her Owners to the Owners of the said goods and set off recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

### RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
### CHARTER PARTY DATED 21ST NOVEMBER 2007

**Clause 93**

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, shippers, consignees, or Owners of the goods shall contribute with the carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salvaging ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salvaging ship or ships belonged to strangers. Such deposit as the carrier of his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or Owners of the goods to the carrier before delivery.

**Clause 94**

All negotiations and eventual fixtures to be kept private and confidential.

**Clause 95**

Owners guarantee that the vessel is suitable for the intended trade.

**Clause 96**

Vessel to be traded only as gearless vessel.

**Clause 97**

In the event of smuggling by the Master, Officer and/or Crew, the Owners shall bear the cost of fines, taxes, or imports levied and the vessel shall be off-hire for any time lost as a result thereof.

**Clause 98**

Vessel not to be relet to third parties/others, on time charter trip or time charter period.

### BIMCO STANDARD WAR RISKS CLAUSE FOR TIME CHARTERS, 1993
### CODE NAME: "CONWARTIME 1993"

1.  For the purpose of this clause, the words: -

    a)  "Owners" shall include the ship-owners, bare-boat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master, and



**RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
CHARTER PARTY DATED 21ST NOVEMBER 2007**

b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

2.  The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether if land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

3.  The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews otherwise howsoever, or to proceed to an area where she shall be subject or is likely to be subject to a belligerent's right of search and/or confiscation.

4.

(a) The Owners may effect War Risks Insurance in respect of Hull and Machinery of the vessel and their interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks) and the premiums and/or calls therefore shall be for their account.

(b) If the Underwrites of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

5.  If the Owners become liable under the terms of employment to pay to the Crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

## RIDER CLAUSES TO MV STARTEC/REGALINDO RESOURCES PTE LTD
## CHARTER PARTY DATED 21ST NOVEMBER 2007

6.  The vessel shall have liberty: -

    (a) To comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions.

    (b) To comply with the order, directions or recommendations of any war risks Underwriters who have the authority to give the same under the terms of the War Risks Insurance.

    (c) To comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement.

    (d) To divert and discharge at any port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier.

    (e) To divert and call at any other port to change the Crew or any part thereof or other persons on board the vessel when there is reason t believe that they may be subject to interment, imprisonment or other sanctions.

7.  If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owner's intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

8.  If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

-END-

271207-01531642                                                            User: NS

**To:** R.S. Platou (Asia)Pte Ltd <dry@platou.com.sg>
**From:** LIU/MOTION MARINE <ljl707@motiontp.com.tw>
**Subject:** [NS] Re: MV STARTEC / REGALINDO / CPD 21.11.2007
**Date:** 27.12.07 11:41:02   (printed 04.01.08 10:22:39)
00AINI/LIU

REGRET RCVD CHTRS FLWS MSG DUE TO THE INDONESIA BULK TERNIMAL CAN NOT ACCEPT VSL
CHTRS CAN NOT USE GEARLESS VSL ELSWHERE.

QUOTE

We regret to inform you that MV Startec has not been accept for use at IBT, thus we are not able to confirm the Time
Chartering of the vessel MV Startec.

UNQTE

WE HAVE BEEN TRYING TO MANAGE POSSIBLE REMIDY N SUBSTITUTE EMPLOYMENT
WHICH REVERTING

REGARDS

LIU/MOTION
&#26032;&#32048;&#26126;&#39636;

MOTION MARINE CO., LTD
TEL: 886-2-27216331
FAX: 27116498/99
E.MAIL: motion.marine@msa.hinet.net
         motion@motiontp.com.tw

----- Original Message -----
**From:** R.S. Platou (Asia) Pte Ltd
**To:** LIU/MOTION MARINE
**Cc:** MOTION MARINE
**Sent:** Thursday, December 27, 2007 9:51 AM
**Subject:** MV STARTEC / REGALINDO / CPD 21.11.2007

Ref: 271207-NS019608 – R.S. Platou Singapore, Dry Cargo Operations Department.


Liu / Aini


MV STARTEC / REGALINDO / CPD 21.11.2007
==


foll frm ows

=qte

Kindly be informed that as per DP agents advice, captioned vsl is expected to berth
on 28Dec07 AGW   WP. Discharge ops will take about 2 days. Vsl will be delivered to
Charterers on 30/31Dec07   DLOSP  Lanshan ATDNSHINC AGW    WP UCE.

In the meantime, we are still awaiting Charterers contact agents at Load port,
in order to inform Master accordingly.

Kindly also revert Charterers On-Hire bunker surveyor for Owners consideration.

Exh 3

**To:** PT
**Sent:** Thursday, January 03, 2008 3:29 PM
**Subject:** M/V STARTEC - REGALINDO CP DD 21 NOVEMBER 2007

Ref: 030108-BE005238 - R.S.Platou Singapore, Dry Cargo Chartering Department.

LIU / BULENT

FLWG MSG HAS JUST BEEN RECEIVED FROM THE OWNERS OF WHICH PLS CONVEY TO CHARTERERS
ASAP AND REQUEST THEIR IMMEDIATE ATTENTION:

++
RE: M/V STARTEC / REGALINDO CP DD 21 NOVEMBER 2007
==

PLEASE BE ADVISED THAT THE VESSEL IS STILL WAITING CHARTERERS VOYAGE INSTRUCTIONS
AT THE PORT OF LANSHAN, OUTER ANCHORAGE.

THE FIRST HIRE HAS NOT BEEN RECEIVED YET AS WELL AS NOT AN ADVISE FROM THE
CHARTERERS UP TO NOW, WHETHER IT HAS BEEN EFFECTED OR NOT.

THEREFORE, OWNERS HEREBY OFFICIALLY REMIND CHARTERERS THAT THEIR INTENTION TO
WITHDRAW THE VESSEL FROM CHARTERERS SERVICE IS STILL VALID AND DUE ON 04 JANUARY
2008, 1400HRS SINGAPORE TIME.

PLEASED TO HEAR CHARTERER'S INTENTION AS EARLY AS POSSIBLE.

BEST REGARDS
SEATREK TRANS PTE LTD

++

BEST REGARDS, BULENT EREREN

R.S. PLATOU (ASIA) PTE. LTD.
TEL    : +65 6336 8733
FAX    : +65 6336 8741
MOB    : +65 9231 2700
EMAIL  : DRY@PLATOU.COM.SG
WEB    : WWW.PLATOU.COM

1/4/2008

Exh 4



REGALINDO RESOURCES PTE LTD., SINGAPORE
ATTN: MR LIM AIK KHAI, EXECUTIVE DIRECTOR

RE: M/V STARTEC – REGALINDO C/P DD 21 NOVEMBER 2007

### WITHOUT PREJUDICE

SEATREK TRANS PTE LTD., SINGAPORE AS OWNERS DELIVERED THEIR VESSEL
"STARTEC" TO CHARTERERS SERVICE ON 30 DECEMBER 2007 AT 2300HRS LT AT
LANSHAN OUTER ANCHORAGE, PORT OF P.R.OF CHINA, AND PUT CHARTERERS ON
NOTICE BY E-MAIL ACCORDINGLY AS PER THE C/P REQUIREMENTS.

HOWEVER CHARTERERS HAVE NEITHER SENT A VOYAGE INSTRUCTION TO THE
VESSEL'S MASTER NOR ACCEPTED HER DELIVERY TO THEIR SERVICE UPTO NOW.

OWNERS PROVIDED THEIR FIRST HIRE STATEMENT FOR CHARTERERS' BROKER WHOM
CONFIRMED RECEIPT OF THE HIRE STATEMENT AND PASSING OF SAME TO
CHARTERERS. OWNERS ALSO SENT THE HIRE STATEMENT TO THE CHARTERERS
DIRECT VIA FAX, THROUGH THEIR BROKERS MESSRS. R.S. PLATOU (ASIA) PTE
LTD, SINGAPORE.

AS PER THE GOVERNING C/P DATED 21 NOVEMBER 2007; CLAUSE NO.5, FIRST
HIRE OF THE VESSEL HAD TO BE MADE 15 DAYS IN ADVANCE. CHARTERERS HAVE
FAILED TO PAY THE FIRST 15 DAYS HIRE ARE THEREFORE IN BREACH THE
CHARTER PARTY.

ACCORDINGLY, OWNERS HEREBY TENDER "2 CLEAR WORKING DAYS WRITTEN NOTICE
OF INTENTION TO WITHDRAW" TO MESSRS. REGALINDO RESOURCES PTE LTD,
SINGAPORE WITHOUT PREJUDICE TO ANY CLAIM THE OWNERS MAY OTHERWISE HAVE
ON THE CHARTERERS AND OWNERS SHALL HAVE NO RESPONSIBILITY FOR ANY
CONSEQUENCES THEREOF.

OWNERS RESERVE FURTHER RIGHTS TO ANY ADDITIONAL CLAIMS DUE TO THEIR
LOSSES.


FOR AND ON BEHALF OF OWNERS
SEATREK TRANS PTE LTD., SINGAPORE

**SEATREK TRANS PTE LTD**

......................................
Authorised Signature

Efh 5

## SEATREK TRANS PTE LTD

80 Anson Road, #25-04 Fuji Xerox Towers, Singapore 079907 • Tel: 65 - 6227 7101 / 6227 7980 • Fax: 65 - 6227 7051
Email: sea@seatrek.com.sg • Co. Reg. No.: 199904168Z