Donald J. Kennedy
Gary D. Sesser
Laura Anne Reeds
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005-2072
Tel. No. 212-238-8707
Attorneys for Defendants
Regalindo Resources Pte Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
SEATREK TRANS PTE LTD.,                                      :
                                                             :
                                                             :
                    Plaintiff,                               :
                                                             :          08 Civ. 00551 (LAP)
                                                             :
             - against -                                     :          ECF CASE
                                                             :
                                                             :
REGALINDO RESOURCES PTED LTD.,                               :
                                                             :
                                                             :
                    Defendant.                               :
                                                             :
                                                             :
-------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF REGALINDO RESOURCES PTE, LTD.'S APPLICATION TO VACATE ORDER OF ATTACHMENT**


CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005
———
(212) 732-3200

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF ARGUMENT .............................................................................. 2

POINT I

    THE ATTACHMENT OF DEFENDANT REGALINDO'S EFT WAS A
    VIOLATION OF SUBSANTIVE DUE PROCESS  BECAUSE THIS
    COURT LACKS JURISDICTION OVER REGLAINDO ......................................3

POINT II

    ARTICLE 4A OF THE UCC PROHIBITS ATTACHMENT OF
    ELECTRONIC FUND TRANSFERS IN THE HANDS OF AN
    INTERMEDIARY BANK......................................................................................9

POINT III

    THE ATTACHMENT OF AFTER-ACQUIRED PROPERTY WAS
    IMPERMISSIBLE AND SHOULD BE VACATED.............................................13

POINT IV

    SERVICE ON GARNISHEES OF SERVICE OF MARITIME
    ATTACHMENT AND GARNISHMENT WAS IMPROPER AND
    CONTRARY TO THE  FEDERAL RULES OF CIVIL PROCEDURE.................15

POINT V

    THE COMPLAINT SHOULD BE DISMISSED ON THE GROUND OF
    *FORUM NON CONVENIENS*...............................................................................18

CONCLUSION............................................................................................... 20

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*American Dredging Co. v. Miller*, 510 U.S. 443 (1994) .........................................................18

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne De Navigation*,
605 F.2d 648 (2d Cir. 1979)...............................................................................4, 5, 6, 7

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434
(2d Cir. 2006)...................................................................................................4, 5, 7, 8, 10

*Burlington Northern R. Co. v. Woods*, 480 U.S. 1 (1977) .......................................................11

*Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224 (2d Cir. 1985) .......................4

*Grain Trader, Inc. v. Citibank, N.A.*, 160 F.3d 97, U.C.C. Article 4A.............................10, 12

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ...................................................4

*Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren*, 485 F. Supp. 2d 399
(S.D.N.Y. 2007) .............................................................................................................16

*Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).........................16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)..................................................................18

*Rafferty v. Halprin*, No. 90 Civ. 2751(CSH), 1990 U.S. Dist. LEXIS 13941
(S.D.N.Y. 1990) .............................................................................................................16

*Reibor International Ltd. v. Cargo Carriers (KACZ-Co.), Ltd.*, 759 F.2d 262
(2d Cir. 1985).............................................................................................................13, 14

*Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. DE Navegacion*,
773 F.2d at 1536 .............................................................................................................6

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ...............................................................................5

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532
(S.D.N.Y. 2007)...............................................................................................................11

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).......................4, 6, 10, 11, 13

## STATE CASES

*Dattner v. Conagra Foods, Inc.*, No. 01 Civ. 11297(RCC), 2003 WL. 1740448
(Apr. 2, 2003)..................................................................................................19

*European American Bank v. Bank of Nova Scotia*, 12 A.D.3d 189, 784 N.Y.S.2d 99
(1st Dept. 2004) ..............................................................................................10

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*,
No. 06-102, slip op., 2007 WL. 632763 (Mar. 5, 2007)..............................18, 19

*Weston Compagnie v. La Republica de Ecuador*, No. 93 Civ. 2698, 1993 WL. 267282..........9

## FEDERAL STATUTES

Fed. R. Civ. P. 4.1(a) ............................................................................................15

Fed. R. Civ. P. 4(l) ...............................................................................................15

Fed.R.Civ.P., Supp. Rule E(4)................................................................................15

## STATE STATUTES

Uniform Commercial Code, N.Y.U.C.C. Law § 4-A-104........................................9

Uniform Commercial Code, N.Y.U.C.C. Law § 4-A-502......................9, 10, 11, 12

Uniform Commercial Code, N.Y.U.C.C. Law § 4A-502 cmt. 4 ............................10

Uniform Commercial Code, N.Y.U.C.C. Law § 4-A-503...........................9, 10, 12

## REGULATIONS

Federal Reserve System Regulation J, 12 C.F.R. Pt. 210.......................................11

**PRELIMINARY STATEMENT**

Regalindo Resources Pte Ltd. ("Regalindo"), a Singapore based company, entered into negotiations with Seatrek Trans Pte Ltd. ("Seatrek"), a Singapore based company, via two shipbrokers, Motion Marine Co. Ltd. in Taiwan and R.S. Ploutou (Asia) Pte Ltd. in Singapore. The subject of the negotiations was the M/V Startec and attached as Ex. 2 to the Complaint is a charter party for the M.V. Startec which Regalindo did not sign (Phua Decl. ¶ 7). The Charter, Exhibit 2 to the Complaint, by its own terms, provides that the M/V Startec is a Hong Kong flag vessel, that the Charter was made and concluded in Singapore, that payment of charter hire was to be made to a bank in Singapore, that any dispute under the Charter was to be settled by arbitration in Singapore with English law to apply, and that the M/V Startec is restricted from trading to and from the United States. (Kennedy Aff. ¶¶ 3 and 4).

This action was commenced by the plaintiff Seatrek who filed a complaint together with an *ex parte* application for the issuance of process of maritime attachment and garnishment on or about January 22, 2008. Seatrek sought the process of attachment in order to obtain *quasi in rem* jurisdiction over the defendant, Regalindo and to obtain security for an alleged claim against Regalindo for breach of the fixture agreement for the M/V Startec. After the Court granted the application and issued process, Seatrek served the process on various garnishee banks over several days, including the garnishee, The Bank of New York ("BONY").

In an electronic fund transfer unrelated to the current lawsuit, Regalindo requested that its bank transfer $250,000 to CV Baranshmur Kalimantan ("BK") in Jakarta, Indonesia on February 5, 2008, for the partial payment of the price of Indonesian steam

coal supplied by BK.  (Phua Decl. ¶ 4).  BK has its head office and place of business at Komplex HKSN Blok 8A No. 106 RT35 Kel. Alalak, Banjarmasin, Kalimantan Selatan, Indonesia.   The name and address of BK's bank which was to receive the sum of $250,000 are as follows:

| | |
|---|---|
| Name: | PT BANK NISP TBK |
| Address: | Komplex. Perumahan Green Garden |
| | Blok 1 - 9 No. 24 |
| | Jl. Raya Panjang (Arteri Kedoya) Jakarta 11520, Indonesia |
| Acc. No.: | 720.150.088891 |
| Swift Code: | NISPIDJA |

This funds transfer between Singapore and Jakarta, Indonesia was blocked by the Bank of New York ("BONY") due to Seatrek's maritime attachment.

## SUMMARY OF ARGUMENT

The service of process of maritime attachment and garnishment upon an intermediary bank in New York violates Regalindo's substantive due process rights. Substantive due process requires that a party should have at least some reasonable expectation that it could be sued in a particular locale before jurisdiction can be exercised over it.  In the maritime context, a party must reasonably be expected to be sued in a jurisdiction where its property may be found.  In the present case, Regalindo could not have expected that it would be forced to appear in court in New York merely by instructing its bank in Singapore to initiate an electronic funds transfer to a bank in Jakarta, Indonesia.  It cannot be argued that Regalindo purposefully availed itself of the privilege of doing business in New York.  Moreover, Regalindo's due process rights were violated by the terms of the *ex parte* attachment order relating to manner for service of process on the garnishees.

2

Regalindo seeks dismissal of the complaint pursuant to Rule 12(b) for lack of jurisdiction over the subject matter and the person, improper venue, insufficiency of process and service of process, *forum non conveniens* and vacation of the process of maritime attachment issued herein pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").

## POINT I

### THE ATTACHMENT OF DEFENDANT REGALINDO'S EFT WAS A VIOLATION OF SUBSANTIVE DUE PROCESS BECAUSE THIS COURT LACKS JURISDICTION OVER REGLAINDO

Seatrek obtained an order under Supplemental Rule B to attach any funds belonging to Regalindo. Based on service of process on BONY and instructions given by Seatrek thereafter, BONY restrained an EFT from Regalindo's account at HSBC in Singapore to the account of CV Baramakmur Kalemarten at PT Bank NISP in Jakarta, Indonesia. The attachment of the EFT which provides the basis for this Court's *quasi in rem* jurisdiction over Regalindo, was a violation of substantive due process and must be set aside because this Court lacks jurisdiction over Regalindo.

The funds transfer at issue in this case was meant to effect payment from one foreign account to another. A New York bank was involved as an intermediary bank only because the payment was denominated in U.S. dollars. Under the facts of this case, the issue before the Court is whether such a "contact" is, without more, sufficient to satisfy substantive due process.

**A.    ATTACHMENTS UNDER RULE B MUST SATISFY SUBSTANTIVE AS WELL AS PROCEDURAL DUE PROCESS REQUIREMENTS**

Rule B of the Supplemental Rules provides for the attachment of property belonging to the defendant where that defendant cannot be found within the district. Rule E(4)(f) grants such a defendant a prompt hearing to contest the attachment. One recent case suggests that resort to Rule E procedures is sufficient to satisfy substantive due process requirements. See Winter Storm Shipping, Ltd. v. TPI, 310 F.3d 263, 273 (2d Cir. 2002). It is clear, however, that Rule E(4)(f) addresses only *procedural* due process requirements—that the defendant be given notice and an opportunity to be heard. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 440 (2d Cir. 2006) (noting that Rule E was adopted "in response to the concern over the absence of a prompt post-seizure hearing at which the defendant could contest the validity of the seizure"). Courts seeking to exert jurisdiction over a defendant in an admiralty or maritime case must also evaluate whether doing so would satisfy the requirements of *substantive* due process as well.

The Second Circuit's pre-Winter Storm cases either found no distinction between the substantive due process standards applicable in admiralty and those applicable in other contexts, or based their rulings on principles of admiralty jurisdiction compatible with contemporary understandings of substantive due process. See Cargill, Inc. v. Sabine Trading & Shipping Co., 756 F.2d 224, 228 n.2 (2d Cir. 1985) (stating that exercise of admiralty jurisdiction based on *quasi in rem* proceeding must meet "minimum contacts" standard of International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny); Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne De Navigation, 605 F.2d 648, 654–55 (2d Cir. 1979) (stating that test of "fair play and substantial justice" in

Shaffer v. Heitner, 433 U.S. 186 (1977), "is not necessarily incompatible with the principle of jurisdiction *quasi in rem* because the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation" (internal quotation marks omitted)).

While the requirements of due process as applied to admiralty proceedings "must be understood in light of the special history and circumstances of that unique body of law," Amoco, 605 F.2d at 655 n.7, extending jurisdiction over a defendant that had no contacts with the district whatsoever, based on the *quasi in rem* attachment of property that the defendant was not even aware would be present in the jurisdiction, would not comport with any conceivable notion of fair play or substantial justice.

## B.    THE ATTACHED "PROPERTY" WAS UNRELATED TO THE DISPUTE BETWEEN THE PARTIES

The Amoco case involved a dispute between two international shipping companies which took place prior to the 1985 amendments to the Admiralty Rules. 605 F.2d 648. While the court declined to hold definitively that Shaffer was binding on suits in admiralty, it analyzed whether the due process requirements set forth in that case, in light of the unique circumstances prevailing in the maritime context, would bar the attachment of the defendant's funds under the *quasi in rem* procedure outlined in Supplemental Rule B. See id. at 654–55. Among other considerations, the court found it to be "most notable" that the property attached by Amoco was "related to the matter in controversy" therein. Id. at 655. This finding supported the court's eventual determination that the due process standard of Shaffer had been met.

In contrast to the property at issue in Amoco, the EFT attached in the instant case was not related to the contract claims pled by Seatrek. In the jurisprudence prior to

Winter Storm, there is no indication that anything in the "special history and circumstances" of admiralty law would make it fair to subject every originator or beneficiary of an EFT who happened to be involved in maritime commerce to litigation in New York. The EFT passing from Regalindo's account at HSBC in Singapore to the account of CV Baramakmur Kalemarten at PT Bank NISP Tbk in Jakarta, Indonesia had no connection whatsoever to the controversy between Regalindo and Seatrek. Thus, Amoco's holding suggests that exerting jurisdiction over Regalindo through the attachment of such property fails to satisfy the requirements of due process.

## C.    THE ATTACHED "PROPERTY" DID NOT ENTER THE JURISDICTION OF THIS COURT WITH THE AGREEMENT OR KNOWLEDGE OF DEFENDANT REGALINDO

Generally speaking, maritime defendants "must reasonably expect to be sued where their property may be found." Amoco, 605 F.2d at 655; Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. DE Navegacion, 773 F.2d at 1536. Accordingly, another factor relied on by the Amoco court in finding that due process had been satisfied was the fact that the attached property had been "sent to New York with the agreement" of the defendant. Amoco, 605 F.2d at 655. It stands to reason, then, that if a defendant is unaware that his or her property may be found in a particular jurisdiction, he or she would not "reasonably expect to be sued" there.

Unlike the property involved in Amoco, the EFT attached in the instant case was not sent into the jurisdiction "with the agreement" of the defendant. Indeed, Regalindo had no reason to believe that an EFT from Singapore to Jakarta would at any point be routed through New York.[1]  Thus, the holding in Amoco suggests that exerting

---

[1] It should also be noted that Winter Storm did not answer the question of who the EFT belonged to when it passed through the intermediary bank. See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d

jurisdiction over Regalindo through the attachment of such property may not comport with the requirements of due process.

**D.    REGALINDO WAS NOT PARTY TO ANY OF THE FIXTURE AGREEMENT WHICH CALLED FOR LITIGATION IN NEW YORK**

Another factor to which the Amoco court accorded "considerable weight" was that the charter party involved in that case specified arbitration in New York and, since "it is not unfair to require the parties to litigate in the forum in which arbitration was designated to take place," due process was satisfied. 605 F.2d at 655.

As opposed to the defendant in Amoco, Regalindo is not a signatory to a charter party and there is a dispute relating to the validity of the unsigned fixture agreement alleged in the Complaint. The fixture agreement was negotiated by brokers in Singapore and Taiwan, on behalf of two Singapore companies, for a Hong Kong flag vessel. The alleged charter provides by its own terms that it was made and concluded in Singapore, that time charter payments were to be made to a bank in Singapore, and that any disputes were to be settled by arbitrators in Singapore under English law. Significantly, by its own terms, the vessel that was subject to the charter was restricted from trading to the United States.

**E.    REGALINDO AND SEATREK ARE BOTH PRESENT AND SUBJECT TO JURISDICTION IN A MORE CONVENIENT FORUM OUTSIDE THIS DISTRICT**

In Aqua Stoli, the Second Circuit stated that a maritime attachment under Rule B would properly be vacated in cases where "the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there, but the plaintiff goes to

---

434, 445 n.6 (2d Cir. 2006). Here, the EFT was attached as it passed from Regalindo's bank account in Singapore to a bank account in Jakarta, and there has yet been no determination as to the ownership of the EFT at the time it happened to pass through New York.

another district to attach the defendant's assets." 460 F.3d at 444–45. The instant case fits this scenario. Here, both Regalindo and Seatrek are present and subject to jurisdiction in Singapore. Both are Singapore companies, and the dispute arises from an alleged charter party made and concluded in Singapore. While the court in <u>Aqua Stoli</u> cautioned that "[i]t is less clear that a district court could vacate an attachment on convenience grounds where the adjacent district is more remote and therefore less obviously 'convenient' to the plaintiff," <u>id.</u>, it is clear that Singapore is a convenient jurisdiction for both of the parties to the instant case. In fact, Seatrek has already commenced arbitration against Regalindo in Singapore, pursuant to the terms of the alleged charter party. (Phua Decl. ¶ 8).

Thus, the fact of this case do not support the exercise of jurisdiction over Regalindo. Rather, they suggest that the attachment of Regalindo's EFT amounted to a violation of substantive due process.

**POINT II**

**ARTICLE 4A OF THE UCC PROHIBITS ATTACHMENT OF ELECTRONIC
FUND TRANSFERS IN THE HANDS OF AN INTERMEDIARY BANK**

New York has adopted Article 4A of the Uniform Commercial Code ("U.C.C.")
to govern electronic transfers of funds.  Article 4A provides that a court may only
"restrain" (1) a person from issuing a payment order to initiate a funds transfer; (2) an
originator's bank from executing the payment order of the originator; or (3) the
beneficiary's bank from releasing the funds to the beneficiary.  N.Y. U.C.C. § 4-A-503;
see also Official Comment, U.C.C. § 4-A-503 (indicating that such restraints may include
orders of attachment, among other types of restraints issued on behalf of creditors or
other claimants with respect to bank accounts).  A creditor cannot reach any other funds
because "no property of the originator is being transferred."  Official Comment, U.C.C.
§ 4-A-502.  The Comment explicitly notes that "[t]his section . . . . is designed to prevent
interruption of a funds transfer after it has been set in motion[;] . . . [i]n particular,
intermediary banks are protected."  Official Comment, U.C.C. § 4-A-503.  See also
Weston Compagnie v. La Republica de Ecuador, No. 93 Civ. 2698, 1993 WL 267282. at
*3–4 (S.D.N.Y. July 14, 1993).

When an individual transfers funds from its bank to another bank, the originator's
bank is often required to use an intermediary bank, i.e., a bank that has no relationship
with either the originator or the beneficiary.  U.C.C. § 4A-104(2).  Intermediary banks
are immune from attachment because an intermediary bank holds no property of the
originator or beneficiary of a funds transfer.  An intermediary bank's relationships are

only with, and its obligations are only to, other banks.[2]  Indeed, a creditor may not serve process on an intermediary bank.  U.C.C. § 4A-502(4) & cmt. 4; see also European American Bank v. Bank of Nova Scotia, 12 A.D.3d 189, 190, 784 N.Y.S. 2d 99, 100-01 (1st Dept. 2004).  A creditor of an originator may serve process on an originator's bank before a funds transfer is initiated but not afterwards, "because no property of the originator is being transferred."  U.C.C. § 4A-502 cmt. 4.  Likewise, no injunction is permitted against an intermediary bank, because it holds no property of either the originator or the beneficiary.  U.C.C. § 4A-503.  There is no federal law or pre-Winter Storm decision to the contrary.

Rule B(1)(a) of the Supplemental Rules ("Rule B") permits a plaintiff to attach an absent admiralty defendant's "tangible or intangible" personal property.  In Winter Storm, the Second Circuit held that Rule B permitted attachment of an electronic funds transfer ("EFT" or "funds transfer") request received by an intermediary bank as property of the originator of the EFT.

This critical error was recognized in Aqua Stoli Shipping Ltd. v. Gordon Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006), where another Second Circuit panel went so far as to say that "[t]he correctness of our decision in Winter Storm seems open to question." Id. at 446 n.6.  The court went on:

> Because Daccarett was a forfeiture case, its holding that EFT's are attachable assets does not answer the more salient question of *whose* assets they are while in transit.  In the absence of a federal rule, we would normally look to state law, which in this case would be the New York codification of the Uniform Commercial Code, N.Y.U.C.C. Law §§ 4-A-502 to 504.  Under state law, the EFT could not be attached because EFTs

---

[2] As the Second Circuit held in Grain Trader, Inc. v. Citibank, N.A., 160 F.3d 97, 102 (2d Cir. 1998), U.C.C. Article 4A prevents an originator of a funds transfer from suing an intermediary bank.

are property of neither the sender nor the beneficiary while present in an intermediary bank. Id. §§ 4-A-502 cmt. 4, 4-A-504 cmt. 1.

Id.

Furthermore, Article 4A of the U.C.C. has been adopted by the Board of Governors of the Federal Reserve System as Regulation J, and governs funds transfers that utilize Fedwire, the system through which many U.S. dollar transactions clear. See Federal Reserve System Regulation J, 12 C.F.R. Pt. 210. One of the primary goals behind Regulation J is uniformity in the law applicable to all funds transfers.

Supplemental Rule B permits the attachment of "tangible or intangible property" of the defendant. But Rule B is procedural; it does not create a property right. To treat Rule B as establishing a property right, as Winter Storm did, would give Rule B substantive force, which is barred by a federal statute—the Rules Enabling Act. 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right."). Under § 2072(b), a rule may affect "only the process of enforcing litigants' rights and not the rights themselves." Burlington Northern R. Co. v. Woods, 480 U.S. 1, 8 (1977).[3]

Winter Storm substituted their own assumptions in lieu of state law defining property rights. Winter Storm correctly stated that a defendant's bank account in New York would be property subject to maritime attachment, 310 F.3d at 276, but then simply assumed that a funds transfer at an intermediary bank also was an originator's property, i.e., it was "TPI's [the originator's] funds in BNY's [the intermediary bank's] hands." Id.

---

[3] In Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532 (S.D.N.Y. 2007), Judge Haight applied English contract law in vacating an order of maritime attachment on the basis that Rule B was a procedural, not a substantive, rule: "Neither Rule B nor any other of the Supplemental Rules create "a valid prima facie admiralty claim." Rather, the Supplemental Rules fashion procedures by which a valid maritime claim may form the basis for a write of maritime attachment." Id. at 536.

But the funds transfer is in fact not subject to the possession, use or enjoyment of either the originator or the beneficiary. A claim by either the originator or beneficiary to those "funds," would be rejected, as the Second Circuit determined in <u>Grain Traders</u>, 160 F.3d at 102. <u>See</u> U.C.C. §§ 4A-502, 503 and comments thereto.

**POINT III**

**THE ATTACHMENT OF AFTER-ACQUIRED PROPERTY
WAS IMPERMISSIBLE AND SHOULD BE VACATED**

The attachment should be vacated because it failed to attach property of the debtor within the meaning of Supplemental Rule B(1). For an attachment to be effective, the writ of maritime attachment and garnishment must be served upon a custodian of property at the time it is holding property of the creditor. Reibor Int'l Ltd. v. Cargo Carriers (KACZ-Co.), Ltd., 759 F.2d 262, 268 (2d Cir. 1985). Rule B(1)(a) allows a prayer for attachment of "the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees." In the instant case, the garnishee, BONY did not have custody of any tangible or intangible property of Regalindo at the time of service of the writ of attachment.

This Court's *ex parte* Order dated January 23, 2008 provides in part "that service on any garnishee as described above is deemed continuous throughout the day from the time of such service through the opening of the garnishee's business the next business day."

This portion of the Order is a legal fiction contrary to the Second Circuit holding in the Reibor case. In Reibor, which Winter Storm makes no attempt to distinguish, the Second Circuit held that a court should look to state law to determine to what extent electronic funds transfers through New York could be property of a defendant subject to attachment under Supplemental Rule B. In a case decided before the enactment of Article 4A, a shipowner sought to serve process of attachment on New York banks of electronic funds transfers from Madrid to Montreal through New York pursuant to the

CHIPS system.[4]  The vessel owner made four attempts at service of process of garnishment on the New York banks acting as intermediaries on the transfer, but each time the garnishees either had not yet come into custody of the funds or had already transferred them to the receiving bank outside of the state.  This Court began its analysis of whether service of process was effective by stating that:

> [T]he precedent in federal admiralty law is so thin that we should turn to state law more directly on point.  We clearly have this option where we find it appropriate.  And we think it is especially appropriate where, as here, "a decision contrary to the general rule of the state might have disruptive consequences for the state banking system."  New York being the situs for multiple transactions in world commerce, the New York banking system is particularly vulnerable to such disruption.  Often, when a person in one foreign country makes a payment in U.S. dollars to someone in another foreign country, the payment clears through New York . . . .  It is only appropriate that we look to New York law of attachment for guidance.

759 F.2d at 266 (quoting Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 52-53 (2d Cir. (1965))) (other citations omitted).  As Article 4A had not yet been enacted, the Reibor Court looked to the New York CPLR provisions on attachment for guidance.

It is respectfully submitted that this Court's order permitting service on any garnishee to be "deemed continuous throughout the day from time of such services through the opening of the garnishee's business the next day" is contrary to the Second Circuit's holding in Reibor and a violation of Regalindo's rights to due process.

---

[4] CHIPS is the Clearing House Interbank Payments System, consisting of private member banks, very similar to the "SWIFT" system through which the electronic funds transfer at issue in this case passed.

**POINT IV**

**SERVICE ON GARNISHEES OF SERVICE OF MARITIME ATTACHMENT AND GARNISHMENT WAS IMPROPER AND CONTRARY TO THE FEDERAL RULES OF CIVIL PROCEDURE**

Plaintiff's methods of serving process of maritime attachment and garnishment on the garnishees, by facsimile or e-mail, as set forth in the Order Directing Clerk to Issue Process of Maritime Attachment and Garnishment ("Order"), are improper, insufficient, and not a valid means of effecting service under the Federal Rules of Civil Procedure. In addition, Plaintiff failed to file proofs of service or affidavits of service with the Court as required by the Federal Rules of Civil Procedure, and failed to make due and prompt return as required by the Supplemental Rules.

Service of process of maritime attachment and garnishment is governed by Rule 4.1(a), which provides in relevant part as follows:

> Process other than a summons as provided in Rule 4, a subpoena as provided in Rule 45 shall be served by a United States marshal . . . or a person specially appointed for that purpose, who shall make proof of service as provided in Rule 4(l).

Fed. R. Civ. P. 4.1(a). Rule 4(l), in turn, provides that unless service is waived, proof of service must be made to the court. Fed. R. Civ. P. 4(l). Likewise, Rule E(4) of the Supplemental Rules provides for execution of process of maritime attachment by a United States marshal or other person, and requires "making due and prompt return." Fed. R. Civ. P., Supp. Rule E(4)(a). For attachment of intangible property such as bank accounts, the Rule requires that process be executed "by leaving with the garnishee or other obligor" a copy of the complaint and attachment order. Supp. Rule E(4)(c). Thus, neither the Supplemental Rules nor the generally applicable Federal Rules of Civil

Procedure authorize service of process on a garnishee by facsimile or e-mail, without written consent of the garnishee.

Despite having no statutory basis to permit such alternative methods for service of process of maritime attachment and garnishment, the Order, presented *ex parte* and signed by the Court, states that "following initial service by the United States Marshal or other designated process server upon each garnishee, supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, *may be made by way of facsimile transmission or email to each garnishee.*" (emphasis added).

The Court erred in permitting methods of service not authorized by the Federal Rules of Civil Procedure or the local rules, as the federal courts cannot make their own service rules. See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97 (1987) (holding that the federal courts do not have the authority to create service rules, as such authority rests with Congress); Rafferty v. Halprin, No. 90 Civ. 2751(CSH), 1990 U.S. Dist. LEXIS 13941, at *4 (S.D.N.Y. Oct. 19, 1990) ("Where Congress has specifically proscribed the manner in which service of process should be made, the courts are not at liberty to depart from those procedures.").

While it is permissible to serve process by electronic means if the recipient of the service has agreed in writing to accept service in that manner, see Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, 485 F. Supp. 2d 399, 409-10 (S.D.N.Y. 2007), it is improper for the Court at the outset to issue an order on an *ex parte* application that permits service by electronic means. The federal courts should not permit service of maritime attachment orders by electronic means without prior consent to such service methods by the garnishees, especially given the due process concerns with *ex parte*

maritime attachment procedures. Even if written consent is ultimately provided by the garnishee, it is unfair and prejudicial to the party whose property is being attached to allow a plaintiff to shortcut around the service rules when attaching such property. Accordingly, the Court's Order should not have permitted service by facsimile or e-mail.

In addition, Plaintiff failed to file proofs of service or affidavits of service with the Court. As noted above, Rule 4(l) provides that a person effecting service "shall make proof thereof to the court," and if the person effecting service is other than a marshal, the person "shall make affidavit thereof." Likewise, Rule 4.1 requires the filing of proof of service. Thus, while it is acceptable for service to be effected by a person other than a United States Marshal, an affidavit of service must be filed with the Court each time service is made.

Furthermore, Plaintiff has failed to make "due and prompt return" as required by Supplemental Rule E(4)(a). Plaintiff has served process of attachment and garnishment on multiple garnishee banks daily over a period of weeks and has failed to file any proofs of service or affidavits of service or a "prompt return" with the Court. Plaintiff's conduct in this regard violates Regalindo's due process rights, and the attachment should therefore be vacated.

## POINT V

## THE COMPLAINT SHOULD BE DISMISSED
## ON THE GROUND OF *FORUM NON CONVENIENS*

The doctrine of *forum non conveniens* justifies the dismissal of a case over which an foreign court has jurisdiction where "trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." American Dredging Co. v. Miller, 510 U.S. 443, 447-48 (1994) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981)).

In an admiralty suit that it referred to as "a textbook case for immediate *forum non conveniens* dismissal," the Supreme Court recently held that a court may dismiss a case on this ground without having first decided other threshold objections such as to subject matter jurisdiction. See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., No. 06-102, slip op., 2007 WL 632763, at *2 (Mar. 5, 2007). The defendant in that case, Sinochem, had earlier sued the plaintiff, Malaysia International, in a Chinese admiralty court and was successful in having Malaysia International's ship seized and held for security. Id. at 4. Malaysia International then brought a suit against Sinochem in the Eastern District of Pennsylvania, asserting that Sinochem had made misrepresentations in its petition to the Chinese court. Id. In affirming the District Court's determination that "the case could be adjudicated adequately and more conveniently in the Chinese courts," the Supreme Court noted that "the gravamen of Malaysia International's complaint— misrepresentations to the Guangzhou Admiralty Court in the course of securing arrest of the vessel in China—is an issue best left for determination by the Chinese courts. Id. at 4, 10.

18

It is also worth noting that the presumption usually granted in favor of a plaintiff's choice of forum is much weaker where the plaintiff itself is a foreign entity. <u>Id.</u> at 6. If there is a question as to whether a plaintiff is "foreign" for the purpose of granting the presumption in favor of a domestic plaintiff's choice of forum, the Southern District will examine the plaintiff's actual ties to the United States. <u>Dattner v. Conagra Foods, Inc.,</u> No. 01 Civ. 11297(RCC), 2003 WL 1740448, at *3 (Apr. 2, 2003) (refusing to apply presumption despite plaintiff's claim of U.S. residency).

The similarities between <u>Sinochem</u>, <u>Dattner</u>, and the instant case are undeniable. Startrek has commenced arbitration proceedings against Regalindo in Singapore (Phua Decl. ¶ 8). As in <u>Sinochem</u> and <u>Dattner</u>, Startrek is a foreign plaintiff. Thus, like the district court wisely did in Sinochem, and the Southern district did in <u>Dattner</u>, this Court should dismiss Startrek's suit on the ground of *forum non conveniens*.

## CONCLUSION

As set forth above, dismissal of the complaint would be proper pursuant to Rule 12(b) on the grounds of lack of jurisdiction over the subject matter and the person, improper venue, insufficiency of process and service of process, and *forum non conveniens*. The cumulative effect of these deficiencies renders the proceedings in this forum patently unfair to the defendant and absolutely requires dismissal of the complaint and vacation of the process of maritime attachment.

Wherefore, defendant Regalindo respectfully requests that process of maritime attachment and garnishment in this action be vacated and the complaint dismissed together with such other relief that is just and proper, including an award for costs, expenses and a reasonable allowance for attorneys' fees.

Dated: New York, New York
      February 22, 2008

CARTER LEDYARD & MILBURN LLP

By:                                 
      Donald J. Kennedy
      Gary D. Sesser
      Laura A. Reeds
Two Wall Street
New York, New York 10005-2072
Tel. (212) 732-3200
Fax: (212) 732-3232

*Attorneys for Defendant Regalindo Resources Pte Ltd.*