BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEATREK TRANS PTE LTD., <br><br>                      Plaintiff, <br><br>    - against - <br><br> REGALINDO RESOURCES PTE LTD., <br><br>                      Defendant. | 08 Civ. 00551 (LAP) |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S ORDER TO SHOW CAUSE SEEKING TO VACATE AN ADMIRALTY SUPPLEMENTAL RULE B PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .........................................................................................1

THE BASIC FACTS.........................................................................................................2

    A.      THE NEW YORK ATTACHMENT ORDER .................................................2
    B.      SERVICE ON THE BANK OF NEW YORK...................................................3
    C.      THE UNDERLYING DISPUTES ...................................................................3
    D.      THE ATTACK ON THE ATTACHMENT ORDER BY REGALINDO IN
           THE SINGAPORE COURT.........................................................................4

DISCUSSION .................................................................................................................5

POINT I .........................................................................................................................5
RULE B DOES NOT VIOLATE DUE PROCESS  WHERE THE DEFENDANT
CANNOT BE "FOUND" ..................................................................................................5

    A.      RULE B ATTACHMENTS ARE NOT REQUIRED TO "SATISFY
           SUBSTANTIVE AS WELL AS PROCEDURAL DUE PROCESS
           REQUIREMENTS." (BRIEF AT 4-5) ......................................................5
    B.      THE ATTACHED PROPERTY MAY BE "UNRELATED TO THE
           DISPUTE BETWEEN THE PARTIES" (BRIEF AT 5-6).........................................7
    C.      THE RULE B DEFENDANT NEED NOT AGREE TO OR HAVE
           KNOWLEDGE IN ORDERING AN ELECTRONIC FUND TRANSFER THAT
           SUCH "PROPERTY" WILL BE CLEARED THROUGH THE NEW YORK
           CLEARING HOUSE SYSTEM ...................................................................9
    D.      REGALINDO'S ARGUMENT THAT IT IS NOT A PARTY TO "ANY OF
           THE [SIC] FIXTURE AGREEMENT WHICH CALLED FOR LITIGATION IN
           NEW YORK" IS IRRELEVANT...........................................................11
    E.      REGALINDO'S ASSERTION OF AN "AQUA STOLI" EXCEPTION IS
           WITHOUT MERIT ...................................................................11

POINT II .......................................................................................................................12
REGALINDO'S ATTACK ON WINTER STORM IS WITHOUT MERIT....................12

POINT III.......................................................................................................................13
REGALINDO'S "AFTER-ACQUIRED  PROPERTY" ARGUMENT IS WITHOUT
MERIT............................................................................................................................13

POINT IV.......................................................................................................................15
REGALINDO'S SECOND ATTACK ON THE  ATTACHMENT ORDER, FOR
PERMITTING  ELECTRONIC SERVICE, IS ALSO WITHOUT MERIT....................15

POINT V...........................................................................................................................17
REGALINDO'S FORUM NON  CONVENIENS ARGUMENT IS SPECIOUS............17

CONCLUSION.................................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*, 605 F.2d 648 (2d Cir. 1979)...................................................................6,7,9

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006) ............................................................................................................8,11,12,18

*Atkins v. Fibre Disintegrating Co.*, 85 U.S. (18 Wall.) 272 (1873).......................................5

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44 (2d Cir. 1996) ....................................................................................................................5,6

*General Tankers Pte Ltd. v. Kundan Rice Mills Ltd., et al.*, 475 F. Supp. 2d 396 (S.D.N.Y. 2007)................................................................................13

*Ex Parte Louisville Underwriters*, 134 U.S. 488, 10 S. Ct. 587, 33 L. Ed. 991 (1890)..........................................................................................................6

*Manro v. Almeida*, 23 U.S. (10 Wheat.) 473 (1825).............................................................5

*Navalmar (UK) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007)......................................................................15,16,17

*OGI Oceangate Transportation Co. Ltd. v. RP Logistics PVT, Ltd.*, 2007 U.S. Dist. LEXIS 46841 (June 21, 2007) .....................................................12

*Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987).......................................................................16

*Paramount Carriers v. Cook Industries*, 465 F. Supp. 599 (S.D.N.Y. 1995) .........................................................................................................18

*Prestigious Shipping Co. Ltd. v. Agrocorp International Pty Ltd.*, 2007 U.S. Dist. LEXIS 74108 (S.D.N.Y. October 1, 2007)...................................11

*Reibor International Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.*, 759 F.2d 262 (2d Cir. 1985)..........................................................................................10,13,14

*Result Shipping Co. Ltd. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394 (2d Cir. 1995)..................................................................................................18

*Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) ........................7

129054.00601/6621934v.1

*Sinochem International Co. Ltd. v. Malaysia International Shipping Corp.*, No. 06-102, slip op., 2007 WL 632763 (S.D.N.Y. March 5, 2007) .......................................................................................................................... 17

*Trans-Asiatic Oil Limited, S. A. v. Apex Oil Company*, 604 F. Supp. 4 (D. P.R. 1984) ..................................................................................................................... 7

*Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2003) ......................... 1,5,8,10,18

*Ythan Ltd. v. Americas Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004) ...................................................................................................... 14,16

## FEDERAL STATUTES

9 U.S.C. § 8 ...................................................................................................................... 11,17

## STATE STATUTES

N.Y. U.C.C. § 4 ...................................................................................................................... 12

129054.00601/6621934v.1

## PRELIMINARY STATEMENT

Seatrek Transport Pte Ltd. ("Seatrek") commenced its action under Rule B

of the Supplemental Rules For Certain Admiralty and Maritime Claims ("Rule B")

against Regalindo Resources Pte Ltd. ("Regalindo") in January 2008. The Court

issued an attachment order similar to the dozens (if not hundreds) presented to and

issued by the Court, since <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d

Cir. 2003), permitting attachment of electronic fund transfers. Regalindo argues in

its memorandum of law in support of its application to vacate, dated February 22,

2008 ("Brief") that the "cumulative" effect" of its arguments for <u>vacatur</u>

"absolutely requires dismissal of the complaint and vacation ...". Brief at 20.

That conclusion, and the entire Brief, chooses to ignore relevant contrary decisions

from other judges of this Court and the fact that, until over-ruled <u>en banc</u> by the

Second Circuit or expressly or impliedly by a Supreme Court decision, <u>Winter</u>

<u>Storm</u>, remains controlling authority.

Indeed, Regalindo's lead counsel, as discussed below, obtained an <u>ex parte</u>

Rule B attachment order by way of an <u>ex parte</u> complaint in an action entitled

<u>Alumina & Bauxite Co. Ltd. v. Oldendorff Carriers GmbH & Co. KG, et al.</u>, 07

CV 9647 (Judge Batts) (the "<u>Alumina</u> case") in October 2007 in the staggering

sum of \$509 million, Ex. 1 to the Harwood Affidavit.[1]   The terms of the

attachment order presented to, and signed by Judge Batts, were virtually identical

---

[1] Affidavit of Jeremy J.O. Harwood dated March 10, 2008 ("Aff.").

1

to the provisions of the Attachment Order, Aff. Ex. 2, stated here to be, inter alia, a "legal fiction." Brief at 13.

Regalindo's vacatur motion is markedly without merit. Moreover, its attempt to enjoin Seatrek, in the Singapore Court, is a clear attempt to usurp this Court's jurisdiction over its own order.

## THE BASIC FACTS

The basic facts are set out in the accompanying affidavit of Jeremy J.O. Harwood dated March 10, 2008 and its attached exhibits.

### A.    The New York Attachment Order

Seatrek, by verified complaint dated January 22, 2008 (the "Complaint") sought a process of maritime and attachment order. The Complaint was accompanied by a Rule B affidavit verifying that Regalindo could not be "found" in the District, a premise for the issuance of an attachment order.

The Court entered an "Order Directing Clerk To Issue Process Of Maritime Attachment And Garnishment" dated January 23, 2008 (the "Attachment Order").

The Attachment Order expressly permitted, following initial personal service upon the garnishee banks, that:

> . . . supplemental service of the Process of Maritime Attachment and Garnishment, as well as this Order, may be made by way of facsimile transmission or email to each garnishee and, it is further,
>
> ORDERED, that service on any garnishee as described above is deemed continuous throughout the day from the time of such service through the opening of the garnishee's business the next business day.

Aff. Ex. 2.

### B.    Service On The Bank of New York

On January 24, 2008, a third-party process server made personal service on

the Bank of New York ("BONY") of the Attachment Order and other of the Rule

B pleadings. Aff. Ex. 3. BONY (like many other Clearing House banks) has an

established policy to accept service of Rule B attachment orders, after the first

hand delivery, by means of e-mail or fax, and to treat such service as effective

throughout each business day on which service is made. Aff. ¶ 7. Thereafter,

pursuant to BONY's agreement with Seatrek's counsel, daily service was made by

electronic means.    Aff. ¶ 8.    Electronic service was made on BONY on

February 4th and February 5th. Aff. ¶ 9. On or about February 5, 2008 an

electronic fund transfer ("EFT") originated by Regalindo was attached at BONY,

as intermediary. BONY advised of the attachment of $249,975 on February 5.

Seatrek's counsel provided the "prompt" notice, required by Local Rule E.1, by

courier letter to Regalindo in Singapore. Aff. Ex. 4.

### C.    The Underlying Disputes

As stated in the Complaint, ¶ 12, Seatrek alleges that Regalindo breached or

wrongfully repudiated a charter dated on or about November 21, 2007 (Exhibit 2

to the Rule B Affidavit dated January 22, 2008). Disputes arising under the

Charter are governed by English law and subject to arbitration in Singapore. Both

Seatrek and Regalindo have nominated arbitrators. Aff. ¶ 5.

3

**D.    The Attack On The Attachment Order By Regalindo In The Singapore Court**

On or about February 26, 2008 Regalindo made an application in the Singapore High Court ("Singapore Court") for, <u>inter alia</u>: (i) an injunction restraining Seatrek from continuing its Rule B Action and (ii) an order for Seatrek to release the sum presently attached at BONY (the "Application"). Aff. Ex. 5. Regalindo submitted the affidavit of Donald J. Kennedy, Esq., dated February 25, 2008 ("Kennedy Affidavit") in support of the Application. Aff. Ex. 6. As the Application was to be heard on an expedited basis, Seatrek's Singapore counsel requested, at a hearing on February 27, 2008, an adjournment to permit Seatrek to file a rebuttal affidavit to the Kennedy Affidavit. As a pre-condition of the extension (until March 4th for the filing of rebuttal evidence) the Singapore Court, at Regalindo's request, required Seatrek to cease and desist service of the Attachment Order pending a hearing by the Singapore Court on the Application and an undertaking by Seatrek not to seek or accept relief from this Court to enjoin Regalindo from proceeding with the Application.

Seatrek has ceased service of the Attachment Order since February 27, 2008. Aff. ¶ 17. The Singapore Court will hear the Application on March 31, 2008. Aff. ¶ 19.

4

## DISCUSSION

## POINT I

## RULE B DOES NOT VIOLATE DUE PROCESS
## WHERE THE DEFENDANT CANNOT BE "FOUND"

Point I of Regalindo's Brief posits five grounds that, along with its other

arguments, it argues "cumulatively" support vacatur. Id. at 20. The "whole" is no

greater than the "sum of the parts" of the Brief. Regalindo's "Kitchen Sink"

argument that Rule B is a "violation of substantive due process ... because this

Court lacks jurisdiction over Regalindo" is without merit.

### A.    RULE B ATTACHMENTS ARE NOT REQUIRED TO "SATISFY SUBSTANTIVE AS WELL AS PROCEDURAL DUE PROCESS REQUIREMENTS." (BRIEF AT 4-5)

Winter Storm, 310 F.3d at 267-68 examined the history of maritime

attachment as follows:

> Maritime attachment is centuries old. "The use of the
> process of attachment in civil causes of maritime
> jurisdiction by courts of admiralty ... has prevailed
> during a period extending as far back as the authentic
> history of those tribunals can be traced." *Atkins v.*
> *Fibre Disintegrating Co.*, 85 U.S. (18 Wall.) 272, 303
> (1873). As early as 1825, the Supreme Court was able
> to say of the right of attachment in *in personam*
> admiralty cases that "[t]his Court has entertained such
> suits too often, without hesitation, to permit the right
> now to be questioned." *Manro v. Almeida*, 23 U.S. (10
> Wheat.) 473, 486 (1825). "[M]aritime attachment is a
> feature of admiralty jurisprudence that antedates both
> the Congressional grant of admiralty jurisdiction to the
> federal district courts and the promulgation of the first
> Supreme Court Admiralty Rules in 1844." *Aurora*
> *Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85
> F.3d 44, 47 (2d Cir. 1996).

5

(Parallel citations omitted.)

Regalindo walks a fine line in acknowledging, as it must, that "Rule E(4)(f) addresses only <u>procedural</u> due process remedies" not "substantive" due process requirements, despite the Supreme Court precedent, quoted above. Brief at 4 (emphasis in original). Accordingly, Regalindo audaciously argues that where a Rule B defendant has no contacts with the district and is unaware that its property would be present there "extending jurisdiction over a defendant ... based on <u>quasi in rem</u> attachment ... would not comport with any conceivable notion of fair play or substantial justice." <u>Id</u>. Regalindo attempts to argue that <u>Amoco Overseas Oil Co. v. Compagnie Nationale Algenienne de Navigation</u>, 605 F.2d 648 (2d Cir. 1979) supports this argument.

In effect, Regalindo suggests that this Court can and should ignore <u>Winter Storm</u> in favor of those "pre-<u>Winter Storm</u> cases [that] either found no distinction between the substantive due process standards applicable in admiralty ... or based their rulings on principles of admiralty [due process]." Brief at 4 (citations omitted). Not surprisingly, Regalindo cannot cite to a single decision vacating an attachment of an EFT on the grounds that it argues. While lip service is given to the <u>Amoco</u> decision (Brief at 5) the important ruling, as stated there, is omitted:

> Third, <u>Shaffer</u> did not consider assertion of jurisdiction over property in the admiralty context. Because the perpetrators of maritime injury are likely to be peripatetic, <u>Ex Parte Louisville Underwriters</u>, 134 U.S. 488, 493, 10 S. Ct. 587, 33 L.Ed. 991 (1890), and since the constitutional power of the federal courts is separately derived in admiralty, U.S. Constitution Art.

6

> III § 2, **suits under admiralty jurisdiction involve
> separate policies to some extent. This tradition
> suggests not only that jurisdiction by attachment of
> property should be accorded special deference in
> the admiralty context, but also that maritime actors
> must reasonably expect to be sued where their
> property may be found.**

605 F.2d at 655. (emphasis added)

As was well summarized in Trans-Asiatic Oil Limited, S. A. v. Apex Oil

Company, 604 F. Supp. 4, 7 (D. P.R. 1984):

> Thus, the history of maritime attachment itself, the
> autonomy of admiralty jurisprudence, the long
> constitutional viability of maritime attachment, and the
> modern trend in admiralty to strengthen traditional
> admiralty remedies against property, rather than erode
> them, compel the conclusion that the common law
> principles enunciated in *Shaffer v. Heitner, supra* [433
> U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)] do
> not apply to Rule B(1) attachments.

604 F. Supp. at 7.

Regalindo's argument is not advanced on any basis of principle or

precedent.

## B. THE ATTACHED PROPERTY MAY BE "UNRELATED TO THE DISPUTE BETWEEN THE PARTIES" (BRIEF AT 5-6)

In Amoco, 605 F.2d at 655, the property attached "related to the matter in

controversy." Regalindo argues that "Amoco's holding suggests" the necessity of

relatedness "to satisfy the requirements of due process." Id. at 6. Again,

Regalindo cannot cite a single case for the proposition that, in order for an EFT to

be attachable, it must be "[]related to the dispute between the parties." Brief at 5

[capitalization omitted].

7

The reason is clear. <u>Winter Storm</u>, 310 F.3d at 268, entirely undercuts the

argument:

> The property attached need not have a direct
> connection to the claim sued upon; since Rule B(1)(a),
> broadly phrased, allows attachment of "the defendant's
> tangible or intangible personal property," limited only
> by "the amount sued for." The case at bar is
> illustrative; TPI's funds attached by Winter Storm in
> the hands of BNY were generated by a transaction
> bearing no relationship to the charter party underlying
> Winter Storm's claim.

Moreover, in <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.</u>, 460

F.3d 434, 443 (2d Cir. 2006) the Court stated:

> "Maritime parties are peripatetic, and their assets are
> often transitory [citation omitted]." Thus, the
> traditional policy underlying maritime attachment has
> been to permit the attachments of assets <u>wherever they
> can be found</u> and not to require the plaintiff to scour
> the globe to find a proper forum for suit or property of
> the defendant sufficient to satisfy a judgment. [citation
> omitted, emphasis added].

See also, <u>Dominion Bulk International S.A. v. Naviera Panoceanice,</u>

<u>S.A.C., et al.</u>, 2006 Dist. LEXIS 85616 *5-6 (S.D.N.Y. November 21, 2006).

Regalindo's suggestion that the EFT must "relate" to the underlying

transaction in dispute is wrong.

**C.   THE RULE B DEFENDANT NEED NOT AGREE TO OR HAVE KNOWLEDGE IN ORDERING AN ELECTRONIC FUND TRANSFER THAT SUCH "PROPERTY" WILL BE CLEARED THROUGH THE NEW YORK CLEARING HOUSE SYSTEM**

Despite Amoco, 605 F.2d at 655, stating, as quoted above, that "Shaffer did not consider assertion of jurisdiction over property in the admiralty context" [footnote omitted] it concluded that "the presence of the freights, sent to New York with the agreement of appellant, is a sufficient basis for personal jurisdiction under the [Shaffer] due process standard ...". Id., [emphasis added]

Regalindo has filed a "limited appearance" under Rule E so that its Shaffer due process argument is to the quasi in rem jurisdiction over the BONY attachment.

The Chew Declaration[2] states that Regalindo's attached EFT was from HSBC Singapore to "BK," a bank in Jakarta, Indonesia. Id., ¶ 4. Notably the Chew Declaration does not state that Regalindo had no idea the dollar EFT would be routed through the "CHIPS" (the Clearing House Interbank Payments System) in New York. Instead, Regalindo's Brief makes the entirely unsupported and questionable statement that "Regalindo had no reason to believe that an EFT from Singapore to Jakarta would at any point be routed through New York [footnote

---

[2] Declaration of Phua Chew dated February 22, 2008.

omitted]." Brief at 6.  Neither Regalindo nor its counsel could make that statement under penalty of perjury and, for that reason, did not.[3]

Regalindo again ignores <u>Winter Storm</u> which rejected the very argument now advanced in reversing the District Court:

> The practical effect of the district court's analysis is that, in addition to the due process safeguards the 1985 amendments extended to defendants, **funds in an EFT can never be subjected to maritime attachment unless the defendant also had specific advance knowledge of the name and address of the intermediary bank.  We do not agree that so significant a restriction should be placed upon the traditional admiralty practice of maritime attachment.  The use of EFTs, product of the modern electronic age, is widespread in international trade.  Banking networks serving global commerce tend to use intermediary banks in the work's financial capitals such as New York, a wholly foreseeable arrangement that this Court noted in** *Reibor***, 759 F.2d at 266: "Often, when a person in one foreign country makes a payment in U.S. dollars to someone in another foreign country, the payment clears through New York."**

> \*      \*      \*

> Accordingly we hold that when an individual or company transfers funds by means of an EFT, those funds may be subject to maritime attachment in the hands of an intermediary bank without violating constitutional due process, **whether or not the initiator of the transfer knew which intermediary bank would be used to effect it.**

310 F.3d at 273 (emphasis added)

---

[3] To the contrary, the Kennedy Affidavit in the Singapore Court admits that "[a]s a general rule, every EFT denominated in US Dollars 'clears' through an intermediary bank in New York."  Aff. Ex. 6, ¶ 17.

10

**D.    REGALINDO'S ARGUMENT THAT IT IS NOT A PARTY TO "ANY OF THE [SIC] FIXTURE AGREEMENT WHICH CALLED FOR LITIGATION IN NEW YORK" IS IRRELEVANT**

Regalindo argues:

> As opposed to the defendant in <u>Amoco</u>, Regalindo is not a signatory to a charter party and there is a dispute relating to the validity of the unsigned fixture agreement alleged in the Complaint.   The fixture agreement was negotiated by brokers in Singapore and Taiwan, on behalf of two Singapore companies, for a Hong Kong flag vessel.  The alleged charter provides by its own terms that it was made and concluded in Singapore, that time charter payments were to be made to a bank in Singapore, and that any disputes were to be settled by arbitrators in Singapore under English law.  Significantly, by its own terms, the vessel that was subject to the charter was restricted from trading to the United States.

Brief at 7.

Regalindo is still resorting to pre-<u>Winter Storm/Aqua Stoli</u> arguments from

<u>Amoco</u> which are inapposite and contradictory to the entire premise of Rule B

relief in support of arbitration, as set out in 9 U.S.C. § 8.

**E.    REGALINDO'S ASSERTION OF AN "AQUA STOLI" EXCEPTION IS WITHOUT MERIT**

The "narrowly circumscribed" exception of the defendant's location in an

"adjacent" or "across the river" jurisdiction, <u>Aqua Stoli</u>, 460 F.3d at 444, was

construed as follows in <u>Prestigious Shipping Co. Ltd. v. Agrocorp International</u>

<u>Pty Ltd.</u>, 2007 U.S. Dist LEXIS 74108 * 15-16 (S.D.N.Y. October 1, 2007):

> As I stated at the hearing on defendant's motion to vacate, the term "district" is a term of art under federal

11

jurisprudence and refers to a district within the United States Federal Court System. *See* Hearing Transcript 23-25. Notwithstanding Judge Sweet's lone decision holding otherwise, see *OGI Oceangate Transportation Co. Ltd. v. RP Logistics PVT, Ltd.*, 2007 U.S. Dist. LEXIS 46841 (June 21, 2007), *Aqua Stoli* did not grant the district court the power to vacate a maritime attachment based on the plaintiff and defendant presence in the same foreign jurisdiction.

Accordingly, arguments of forum non conveniens or that both parties are "based in Singapore," as in <u>Prestigious</u>, are not valid grounds to seek to vacate an attachment.

## POINT II

### REGALINDO'S ATTACK ON <u>WINTER STORM</u> IS WITHOUT MERIT

Regalindo's "Point II" (Brief at 9-12) based on N.Y. U.C.C. § 4 is nothing more than an attack on <u>Winter Storm</u> for its "critical error" and "substitut[ion] [of] their own assumptions in lieu of state law ...". Brief at 10 and 11. In advancing the <u>Aqua Stoli</u> "footnote" (460 F.3d at 446 n. 6) Regalindo fails to cite this Court to contrary decisions from this Court as well as <u>Aqua Stoli</u> itself.

The <u>Aqua Stoli</u> court expressly recognized the validity of <u>Winter Storm</u>, despite the footnote, in stating:

> Under the law in this Circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction. [citing *Winter Storm*].

460 F.3d at 436.

In <u>General Tankers Pte Ltd. v. Kundan Rice Mills Ltd., et al.</u>, 475 F.

Supp.2d 396, 397 (S.D.N.Y. 2007), the Supplemental Rule B defendant argued

that the <u>Aqua Stoli</u> footnote, as interpreted by another decision from the New York

Court, "requires a narrow application of the attachment rule," Supplemental Rule

B, as it relates to EFTs.

The Court observed:

> While the [*Aqua Stoli*] footnote may query the
> appropriateness of any attachment of an EFT at an
> intermediate bank, whether against the originator or
> the beneficiary, it cannot be read unequivocally to
> overrule *Winter Storm*, nor to undermine the clear
> language of the balance of the decision in *Aqua Stoli*.

475 F.2d at 399.

The Court concluded:

> Hence, the current interpretation of *Aqua Stoli* - that
> EFTs to and from a party are attachable remains
> undisturbed. Therefore, the Court finds that Kundan
> Rice [defendant] had a property interest in the EFT
> from Zeyad to Kundan Rice and that the EFT was
> appropriately attached.

475 F.2d at 399.

## POINT III

### REGALINDO'S "AFTER-ACQUIRED PROPERTY" ARGUMENT IS WITHOUT MERIT

<u>Reibor International Ltd. v. Cargo Carriers (KACZ-CO.), Ltd.</u>, 759 F.2d

262 (2d Cir. 1985) decided the issue of "after-acquired property" not being

attachable. Relying on this case Regalindo advances an "after-acquired property"

argument, that is not supported by citation to a single post-<u>Winter Storm</u> decision.

13

The Attachment Order's provision permitting service to be "deemed continuous throughout the day", so as to attach property received by the garnishee following the first service that day is nevertheless argued to be a "legal fiction" and "violation of Regalindo's rights to due process."[4] Id. at 13-14.

Contrary to recent admonitions to cite contrary decisions from the Court, Regalindo ignores Ythan Ltd. v. Americas Bulk Transport Ltd., 336 F. Supp.2d 305, 307-08 (S.D.N.Y. 2004) where Judge Castel rejected the same Reibor argument stating:

> The question in this case is not whether there is an exception to the requirement that process and a res must coexist in the hands of the garnishee at a single moment in time; undeniably, that is a necessity. Rather, the question is whether, based upon the agreement between counsel for the garnishor and garnishee, process served on the morning of August 25 remained effective throughout the business day. The defendant has a direct interest in the question of whether jurisdiction over his interest in property has been acquired, but that does not give him a seat at the table on all issues relating tot the service of process. For example, Rule E(3)(c) provides that the "[i]ssuance and delivery of process ... of maritime attachment and garnishment shall be held in abeyance if the plaintiff so requests." Defendant in its memoranda makes no claim that Citibank was powerless to consent to service by facsimile so as to avoid inconvenience to itself of calls to (or from) a lobby security desk announcing the anticipated (or actual) arrival of the process server. **Just as the garnishee was free to avoid the burden of in-person service by agreeing to service by fax, so too was it**

---

[4] Regalindo's counsel advances this argument without advising the Court of his presenting and obtaining an order, inter alia, in Alumina with precisely the same language.

14

> **capable of agreeing that it would deem process
> effective through the close of the business day. I see
> nothing in the Supplemental Rules, the Federal
> Rules of Civil Procedure or my order of August 17
> that forecloses such an agreement.** With process in
> place from the moment of service by fax at 9:33 a.m.
> on August 25 to the close of that business day, there
> was both valid Process of Maritime Attachment and a
> res capable of being attached at the point in time that
> the res passed through the hands of Citibank.

[emphasis added]

## POINT IV

### REGALINDO'S SECOND ATTACK ON THE
### ATTACHMENT ORDER, FOR PERMITTING
### ELECTRONIC SERVICE, IS ALSO WITHOUT MERIT

Regalindo cites but evidently disagrees, for present purposes, with
Navalmar (UK) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399
(S.D.N.Y. 2007). It argues that "it is permissible to serve process by electronic
service ..." but "improper for the Court at the outset to issue an order or an ex
parte application that permits service by electronic means." Brief at 16 (emphasis
added). Neither authority nor commonsense support the argument. The argument
appears to be that after the initial personal service the Rule B plaintiff must
perform the otiose step of returning to Court to advise of the garnishees' consent
to electronic service (despite this being both known beforehand and a condition
precedent to subsequent electronic service) and seek permission by, presumably,
amended complaint, a second attachment order to allow service electronically.
Regalindo claims that otherwise the plaintiff "shortcut[s] around the service
rules." Brief at 17. The argument is specious. In Navalmar the Court held:

15

> However, as Citibank required for all subsequent
> executions, Navalmar served its subsequent executions
> electronically, to a pre-designated address established
> for all such garnishments. In effect, copies of the
> complaint and process were "left" electronically, and
> there is nothing in the Admiralty Rules that vitiates a
> method of service insisted on by a garnishee to
> minimize disruption and inefficiency to its personnel
> and operations, and to improve, its ability to comply
> with such garnishments. Of course, district judges are
> not free to rewrite the federal rules governing service
> of process, *see Omni Capital Int'l v. Rudolf Wolff &
> Co.*, 484 U.S. 97, 109, 108 S. Ct. 404, 98 L. Ed. 2d
> 415 (1987), but neither are the rules to be applied
> without consideration of modern methods of
> communication. As I said, process can be "left," to
> paraphrase Admiralty Rule E, electronically as well as
> physically. *See* Admiralty Rule E(4) ("Execution of
> Process"); *see also Ythan*, 336 F. Supp.2d at 308 ("Just
> as the garnishee was free to avoid the burden of in-
> person service, so too was it capable of agreeing that it
> would deem process effective through the close of
> business day."). I hold that Navalmar's maritime
> attachment complied with Admiralty Rules B and E.

485 F. Supp.2d at 410.

The <u>Alumina</u> attachment order of $509,402,591 included the provision,

inter alia, that:

> Ordered that following initial service by the United
> States Marshal or other designated server upon each
> garnishee, that supplemental service of the Process of
> Maritime Attachment and Garnishment, as well as this
> Order, may be made by way of facsimile transmission
> to any garnishee that advises plaintiff that it consents
> to such service …

Aff. Ex. 1.

16

Regalindo is, again, wrong.[5]

## POINT V

## REGALINDO'S FORUM NON
## CONVENIENS ARGUMENT IS SPECIOUS

At POINT V of the Brief (pages 18-19) Regalindo makes a "forum non conveniens" argument. The case cited, <u>Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.</u>, No. 06-102, slip op., 2007 WL 632763, at *2 (S.D.N.Y. March 5, 2007), is entirely inapposite. Brief at 18.

The U.S. Federal Arbitration Act in Section 8, 9 U.S.C. § 8, provides as follows:

> If the basis of jurisdiction be a cause of action otherwise justiciable in admiralty, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

In this matter, the Charter (or alleged Charter) provides for Singapore arbitration. Seatrek specifically reserved its right of Singapore arbitration in seeking Rule B relief, as stated in paragraph 16 of the Complaint. This did not preclude Seatrek's right to a Rule B attachment to obtain security for its potential award.

---

[5] Its assertion that failure to file proofs of daily service has "violat[ed] Regalindo's due process rights," despite receipt of the Local B.2 notice, Ex. 5, is spurious. <u>Id</u>. at 17.

17

Rule B attachments to secure claims that are subject to foreign arbitration or resolution pursuant to arbitration or forum selection clauses are commonplace and available even after the arbitration has been commenced, whether in the United States or abroad.

In Winter Storm the plaintiff's complaint noticed its intention to nominate an arbitrator, which the District Court's decision stated both sides had subsequently done, 310 F.3d at 265. Likewise, the underlying disputes in Aqua Stoli were to be resolved in London arbitration. 460 F.3d at 436. In Result Shipping Co. Ltd. v. Ferruzzi Trading USA, Inc., 56 F.3d 394, 399 (2d Cir. 1995), the Second Circuit held that:

> [t]he statute [Section 8 of the Federal Arbitration act *supra*], "plainly allows a plaintiff such as Result to invoke the admiralty jurisdiction of federal courts to attach the defendant's property … such as [through] the procedure authorized by Supplemental Rule B, and at the same time to have the merits of the dispute resolved in arbitration.

See also, Paramount Carriers v. Cook Industries, 465 F. Supp. 599, 602 (S.D.N.Y. 1995) (pending London arbitration did not deprive a Rule B plaintiff of its right of attachment to obtain security). The argument is frivolous.

18

## **CONCLUSION**

In the circumstances, Plaintiff respectfully requests that the Court deny

Defendant's application for <u>vacatur</u> and dismissal and grant such further relief as it

may deem just.

Dated: New York, NY
      March 10, 2008

> BLANK ROME, LLP
> Attorneys for Plaintiff
>
> By _____
>    Jeremy J.O. Harwood (JH 9012)
>    The Chrysler Building
>    405 Lexington Avenue
>    New York, NY 10174
>    Tel.: (212) 885-5149

129054.00601/6621934v.1