Donald J. Kennedy
Gary D. Sesser
Laura Anne Reeds
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, New York 10005-2072
Tel:  (212) 732-3200
Fax:  (212) 732-3232

*Attorneys for Defendant Regalindo Resources Pte Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                        :
SEATREK TRANS PTE LTD.,                                  :
                                                        :
                                                        :
                                                        :
                        Plaintiff,                      :    08 CIV 00551 (LAP)
                                                        :
                                                        :
                                                        :
            - against -                                 :
                                                        :
REGALINDO RESOURCES PTE LTD.,                            :
                                                        :
                                                        :
                        Defendant.                      :
                                                        :
------------------------------------------------------------------X


**DEFENDANT'S MEMORANDUM OF LAW IN REPLY TO
PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT'S ORDER TO SHOW CAUSE</u>**


6293947.4

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION .............................................................................................. 1

POINT I ........................................................................................................... 2
    THE ATTACHMENT IN THIS CASE DOES NOT COMPORT
    WITH THE REQUIREMENTS OF SUBSTANTIVE DUE
    PROCESS ................................................................................................ 2

A.    THE SUBSTANTIVE DUE PROCESS ANALYSIS SET
    FORTH BYTHE SUPREME COURT IN SHAFFER REQUIRES
    MINIMUM CONTACTS AMONG THE DEFENDANT,
    THE FORUM AND THE LITIGATION ...................................................... 2

B.    THE SUBSTANTIVE DUE PROCESS ANALYSIS
    SET FORTH IN SHAFFER APPLIES TO ATTACHMENTS
    UNDER RULE B ..................................................................................... 3

C.    IN THIS CASE, THERE DO NOT EXIST MINIMUM
    CONTACTS AMONG THE DEFENDANT, THE FORUM AND
    THE LITIGATION SUFFICIENT TO SATISFY
    SUBSTANTIVE DUE PROCESS............................................................... 5

POINT II .......................................................................................................... 7
    THE HISTORY OF MARITIME ATTACHMENT SUGGESTS
    THAT THE ATTACHMENT  IN THIS CASE WAS NOT
    CONTEMPLATED OR SANCTIONED BY RULE B ................................. 7

A.    THE NATURE OF MARITIME COMMERCE HAS CHANGED
    SIGNIFICANTLY SINCE RULE B WAS PROMULGATED .................... 7

B.    THE EFT ATTACHED IN THIS CASE WAS NOT CAPTURED
    BY THE TRADITIONAL REMEDY OF MARITIME ATTACHMENT .... 8

CONCLUSION.................................................................................................10

6293947.4

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Alumina & Bauxite Co. v. Oldendorff Carriers GmbH & Co.*, 07 Civ. 9647
(S.D.N.Y. Oct. 2007) ..................................................................5 n.1

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
605 F.2d 648 (2d Cir. 1979)..................................................1, 4

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434
(2d Cir. 2006)..................................................................7

*Cargill, Inc. v. Sabine Trading & Shipping Co.*, 756 F.2d 224 (2d Cir. 1985) ..................4

*ContiChem LPG v. Parsons Shipping Co.*, 229 F.3d 426 (2d Cir. 2000)..................8, 9

*Engineering Equip. Co. v. Selene*, 446 F.Supp. 706 (S.D.N.Y. 1978) ..................3, 4

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ..................1, 2, 3, 4, 5, 6, 8, 10

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..................3, 4

*Reibor International Ltd. v. Cargo Carriers (KACZ-Co.), Ltd.*, 759 F.2d 262
(2d Cir. 1985)..................................................................8, 9

*Winter Storm Shipping Ltd. v. TPI*, 310 F.3d (2d Cir. 2002)..................1, 2

*Ythan Ltd. v. American Bulk Transport Ltd.*, 336 F. Supp. 2d 305, 307–08
(S.D.N.Y. 2004)..................................................................9

## FEDERAL STATUTES

Fed. R. Civ. P. § 5.5..................................................................9

## STATE STATUTES

Uniform Commercial Code, N.Y.U.C.C. Law § 4-A-503 ..................6

6293947.4

## INTRODUCTION

This case raises the following important questions: (1) whether a Rule B attachment of an electronic funds transfer ("EFT") at an intermediary bank must meet the substantive due process standard of "minimum contacts" required by the Supreme Court in <u>Shaffer v. Heitner</u>, 433 U.S. 186, 189 (1977) to support *quasi in rem* jurisdiction; and (2) whether the fortuitous and transitory presence of a maritime defendant's property in New York in the form of an EFT passing through an intermediary bank, without any further U.S. contacts, meets that standard. Plaintiff Seatrek Trans Pte Ltd. ("Seatrek") acknowledges that the Supreme Court in <u>Shaffer</u> did not consider the assertion of jurisdiction over property in the admiralty context (Opposition Brief, pg. 6).

In <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002), neither the district court nor the Second Circuit analyzed whether the "minimum contacts" standard set forth by the Supreme Court in <u>Shaffer</u> was met under the facts of that case. The district court in <u>Winter Storm</u> vacated the attachment of an EFT because it determined that an ETF is not "property" and therefore the court lacked jurisdiction. 310 F.3d at 267. The Second Circuit reversed and upheld the attachment, ruling that the EFT was "property" subject to Rule B attachment. <u>Id.</u> at 278.

In <u>Winter Storm</u>, the Second Circuit recognized that its decision over 20 years earlier in <u>Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation</u>, 605 F.2d 648 (2d Cir. 1979) considered the possible effect of <u>Shaffer</u> upon *quasi in rem* jurisdiction based upon the New York attachment statute, made applicable by Rule B. 310 F.3d at 270. The <u>Winter Storm</u> Court did not, however, address the issue of whether a Rule B attachment of an EFT at an intermediary bank must meet the <u>Shaffer</u> "minimum

6293947.4

contacts" standard or whether the standard was met in that case. Instead, it engaged in a historical analysis of *procedural* due process, concluding that the 1985 amendments to the Admiralty Rules, providing for prompt notice and an opportunity to be heard, were sufficient to satisfy constitutional requirements. Id. at 272–73.

## POINT I
## THE ATTACHMENT IN THIS CASE DOES NOT COMPORT
## WITH THE REQUIREMENTS OF SUBSTANTIVE DUE PROCESS

A.    The Substantive Due Process Analysis Set Forth by the Supreme Court in Shaffer Requires Minimum Contacts Among the Defendant, the Forum and the Litigation

In Shaffer, a shareholder filed a derivative suit in Delaware against a Delaware corporation, its subsidiary and 28 officers and directors. 433 U.S. at 189. The individual defendants were nonresidents of Delaware. Id. at 191. The plaintiff alleged that the individual defendants took certain actions in Oregon that resulted in civil and criminal antitrust liability. Id. at 190. A Delaware statute permitted the seizure of property located in Delaware for the purpose of compelling the appearance of a nonresident defendant. Id. at 190 n.4. Pursuant to this statute, the plaintiff moved for, and was granted, a sequestration order for stock owned by the individual defendants. Id. at 192. While none of the stock certificates were physically present in Delaware, state law declared that Delaware was the situs of all stock in Delaware corporations. Id.

The individual defendants contested the seizure on the grounds of procedural and substantive due process. Id. at 189. In upholding the attachment, the Delaware Supreme Court relied on "the ancient origins of the sequestration procedure and approval of that procedure in the opinions of [the Delaware Supreme Court]." Id. at 194.

6293947.4                                        2

On appeal, the Supreme Court held that the procedure employed by Delaware violated substantive due process. Id. at 189. The Court held that the standard of "fairness and substantial justice" set forth in International Shoe Co. v. Washington, 326 U.S. 310 (1945), governed actions *in rem* as well as those *in personam*. 433 U.S. at 206–07. Thus, in order for an exercise of jurisdiction over a defendant to satisfy substantive due process requirements, there must exist "minimum contacts" between the defendant, the forum and the litigation. Id. at 207–09. While the presence of property in a jurisdiction often will be a factor in the minimum-contacts analysis, the mere presence of property is no longer a sufficient basis on which to exercise jurisdiction over a defendant or a defendant's interest in property. Id. at 207.

While acknowledging "the long history of jurisdiction based solely on the presence of property in a State," the Supreme Court noted that "traditional notions of fair play and substantial justice can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage." Id. at 212 (internal brackets and quotation marks omitted).

### B.     The Substantive Due Process Analysis Set Forth in Shaffer Applies to Attachments under Rule B

Shortly after the Supreme Court decided Shaffer, the U.S. District Court for the Southern District of New York concluded that the due process clause of the Fifth, but not the Fourteenth Amendment applies to suits in admiralty. Engineering Equip. Co. v. Selene, 446 F.Supp. 706 (S.D.N.Y. 1978). Accordingly, while substantive due process does not require that an admiralty defendant have minimum contacts with the *state* in

which the court sits, it does require that the defendant have minimum contacts with the *United States* as a whole. Id. at 709. The court noted that "[t]he defendant's vessels sailed into the port of Philadelphia in order to take on and carry plaintiffs' cargoes," which "was a purposeful act designed to further the defendants' business interests in the United States," and from which the plaintiff's claims arose. Id. at 710. The debt that was attached was "by no means fortuitous," and arose "out of charter parties which the defendants executed with American companies and which contemplated at least partial performance within the United States." Id. These contacts convinced the court that the defendants "could reasonably have foreseen" litigation in the United States. Id.

More recent cases either have found no distinction between the substantive due process standards applicable in admiralty and those applicable in other contexts, or have explicitly based their rulings on principles of admiralty jurisdiction compatible with those standards. See Cargill, Inc. v. Sabine Trading & Shipping Co., 756 F.2d 224, 228 n.2 (2d Cir. 1985) (stating that exercise of admiralty jurisdiction based on *quasi in rem* proceeding must meet "minimum contacts" standard of International Shoe and its progeny); Amoco, 605 F.2d at 654–55 (stating that test of "fair play and substantial justice" in Shaffer, "is not necessarily incompatible with the principle of jurisdiction *quasi in rem* because the presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation" (internal quotation marks omitted)).

Whether the Court concludes that the Shaffer analysis demands minimum contacts between the defendant, the United States and the litigation, or between the defendant, a particular state and the litigation, it is undeniable that, apart from the EFT in

6293947.4                                   4

question, there were absolutely no contacts between the defendant, the underlying dispute in this case, and the United States as a whole.

### C.    In This Case, There Do Not Exist Minimum Contacts Among the Defendant, the Forum and the Litigation Sufficient to Satisfy Substantive Due Process

Although the extent to which Shaffer applies in admiralty is debated, in order to find that the attachment in this case comported with the requirements of substantive due process, the Court would have to conclude that the "minimum contacts" standard and notions of "fair play and substantial justice" do not apply *at all* in admiralty cases.[1]

As in Shaffer, neither the subject matter of the litigation nor the underlying cause of action in this case are in any way related to the "property" found to be present in the jurisdiction. See 433 U.S. at 213. The alleged charter party on which this suit is brought (the "Charter") states that it was negotiated and concluded in Singapore. The EFT restrained by Seatrek on February 5, 2008 was unrelated to that Charter or to any other dealings between Plaintiff and Defendant. Rather, those funds were being transferred to a third party in Jakarta, Indonesia, for an unrelated transaction. A New York bank was involved as an intermediary *only* because the payment was in U.S. dollars.

By way of contrast, the defendants in Shaffer had far more substantial contacts with Delaware than the Defendant here, Regalindo Resources Pte Ltd. ("Regalindo") has with the United States. The defendants in Shaffer were officers and directors of a

---

[1] Seatrek implies that this argument is without merit, given that the Defendant's law firm obtained a Rule B attachment on behalf of a different client in Alumina & Bauxite Co. v. Oldendorff Carriers GmbH & Co., 07 Civ. 9647 (S.D.N.Y. Oct. 2007). See Seatrek Opposition at 1. This argument is a red-herring. Personal jurisdiction is a defense that may be waived. The defendant in the Oldendorff case did not raise personal jurisdiction as a defense, and the jurisdictional issues presented in this case were never briefed, argued or decided in Oldendorff.

*Delaware* Corporation, and owned stock that was situated *by law* in Delaware. 433 U.S. at 189. Here, both Plaintiff and Defendant are based in Singapore and there is no allegation that Regalindo ever transacted business in, or had any other contacts with the State of New York or the United States. In fact, the Charter specifically precludes the subject ship—the M/V Startec, a Hong Kong flag vessel—from trading to and from the United States. The dispute in Shaffer was governed by Delaware law. Id. at 216. Here, any disputes arising from the Charter are subject to English law and must be settled by arbitration in Singapore. As stated, the property in Shaffer was located in Delaware as a matter of Delaware law. Id. at 189. In this case, the EFT in question is not even considered attachable property under New York law. U.C.C. § 4-A-503; see Regalindo Memo of Law, Feb. 22, 2008, at 9–12 (discussing issue in greater detail).

If the Shafer defendants were found not to have "purposefully availed themselves of the privilege of conducting activities within the forum," and "had no reason to expect to be haled before a Delaware court," 433 U.S. at 216, Regalindo, which has had no deliberate contacts with the United States whatsoever, cannot be said to have purposely availed itself of the privilege of conducting activities in this forum or to have any reason to expect to be hailed before this Court. An unimpeded EFT would spend a few seconds, at most, in transit through New York. In short, under the facts presented in this case, it is impossible for a defendant to have *less* contact with the United States and still have property attached.

## POINT II

### THE HISTORY OF MARITIME ATTACHMENT SUGGESTS THAT THE ATTACHMENT IN THIS CASE WAS NOT CONTEMPLATED OR SANCTIONED BY RULE B

A.     **The Nature of Maritime Commerce Has Changed Significantly Since Rule B Was Promulgated**

Admiralty Rule 2, the predecessor of Supplemental Rule B, was promulgated in 1844 and updated in 1920. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 441 n.3 (2d Cir. 2006). The philosophy behind permitting such attachments was that maritime defendants were typically peripatetic, with assets—such as ships—that were frequently transitory, and that plaintiffs should not be forced, as a result, to "scour the globe to find a proper forum for suit." Id. at 443. Subjecting a defendant engaged in maritime commerce to suit in a forum where his property was present did not seem unfair, as property was unlikely to be present in a district without the knowledge and consent of its owner. In the 19th Century, then—and even well into the 20th Century, before the meteoric rise of global commerce and the advent of EFTs—maritime attachments were simply not likely to raise substantive due process concerns.

Today, however, due to the nature of international commerce in the 21st Century, "property" in the form of an ETF will often be fortuitously "present" in a jurisdiction without the knowledge or consent of the owner. It is simply not possible for companies engaged in international commerce today to ensure that transactions between two foreign banks do not result in an ETF passing through a U.S. jurisdiction. It would never occur to a foreign company having no contacts with the United States that funds being sent from one foreign bank to another as a result of a transaction occurring entirely outside of the United States could be captured as those funds were momentarily "present"—in the

form of little ones and zeros—in the hands of an intermediary bank in the United States. It is fundamentally unfair to subject such defendants to suit in the United States.

As the Supreme Court has noted, "traditional notions of fair play and substantial justice can be as readily offended by the perpetuation of ancient forms that are no longer justified as by the adoption of new procedures that are inconsistent with the basic values of our constitutional heritage." Shaffer, 433 U.S. at 212 (internal brackets and quotation marks omitted). It would certainly offend traditional notions of fair play and substantial justice to allow the attachment of property under Rule B without any consideration of whether the exercise of jurisdiction over the owner of such property would comport with the requirement of "minimum contacts" elucidated by the Supreme Court in Shaffer.

B.    **The EFT Attached in This Case Was Not Captured by the Traditional Remedy of Maritime Attachment**

While the Plaintiff relies on the "centuries old" remedy of maritime attachment to justify the attachment herein, it is important to realize that this time-honored remedy did not capture the EFT at issue. This Court has held that a valid maritime attachment requires that property sought to be attached must be in the hands of the garnishee *at the time that the order of attachment is served.* Reibor Int'l Ltd. v. Cargo Carriers Ltd., 759 F.2d 262 (2d Cir. 1985). More recently, the Court refused to uphold the maritime attachment of property held by a garnishee pursuant to an invalid temporary restraining order ("TRO") until the process of maritime attachment was served. ContiChem LPG v. Parsons Shipping Co., 229 F.3d 426 (2d Cir. 2000). In addition, the Federal Rules of Civil Procedure require that consent to service other than by hand "must be in writing."

Fed. R. Civ. P. §5.5. In fact, where written consent has not been obtained, "service by electronic or alternative means is not proper." Id. (emphasis added).

In this case, the order of attachment was served *by fax* on the garnishee bank, Bank of New York Mellon ("BNYM") *prior* to its receipt of the EFT at issue. It is BNYM's standard practice to accept supplemental service of process by fax when the court's order so permits.[2] Supplemental Kennedy Aff. ¶ 6. BNYM did so in this case, and the ETF was held pursuant to service faxed by the Plaintiff's counsel earlier that day. In its Opposition Brief, counsel for Seatrek states that service of process by fax was made "pursuant to BONY's [sic] agreement with Seatrek's counsel." Id. at ¶ 4. However, BNYM subsequently confirmed that "[t]here was/is no written agreement between plaintiff's counsel and the Bank with regard to daily service of process." Id. at ¶ 6.

Seatrek's reliance on Ythan Ltd. v. American Bulk Transport Ltd., 336 F. Supp. 2d 305, 307–08 (S.D.N.Y. 2004), wherein Judge Castel rejected the Reibor rule with regard to the attachment of after-acquired property, is likewise misplaced. Judge Castel's decision was based upon the existence of an "agreement between counsel for the garnishor and garnishee." As noted, however, in this case there was and is *no agreement* between counsel for Seatrek and BNYM.

Thus, the effect of BNYM's decision to accept service of process by fax, and to block any transfer received throughout the day, amounted to a *de facto* invalid TRO of the kind condemned in Conti-Chem, *supra*, and—worse—was obtained *ex parte*, with none of the judicial protections normally afforded to a defendant in a TRO proceeding

---

[2] The order of maritime attachment stated that, following initial service of process, supplemental service "may be made by way of facsimile transmission or email," and that "service on any garnishee . . . is deemed continuous throughout the day from the time of such through the opening of the garnishee's business the next day." Order of Judge Preska, Jan. 23, 2008.

and without having to meet the exacting standards required for the imposition of a TRO (*i.e.*, irreparable injury, no adequate remedy at law, probability of success on the merits, balance of hardship tipping in plaintiff's favor, and the posting of a bond).

## CONCLUSION

As set forth above, <u>Shaffer</u>'s "minimum contacts" analysis applies to attachments under Rule B. Based on the undisputed absence of contacts between Defendant, the underlying dispute in this case, and the United States (apart from the momentary and fortuitous "presence" of an EFT) it would offend traditional notions of fair play and substantial justice to subject Regalindo's interest in property to the jurisdiction of this Court even under the most indulgent "minimum contacts" standard. The EFT in this case was not captured under the "centuries old" maritime attachment procedure, but as the result of a *de facto* temporary restraining order, contrary to Second Circuit case law.

For these reasons, the Court should vacate the process of maritime attachment and garnishment in this action and dismiss the Complaint.

Dated: New York, New York
March 21, 2008

CARTER LEDYARD & MILBURN LLP

By: _____
Donald J. Kennedy
Gary D. Sesser
Laura Anne Reeds

Two Wall Street
New York, New York 10005-2072
Tel. (212) 732-3200
Fax: (212) 732-3232

*Attorneys for Defendant Regalindo Resources Pte Ltd.*

Donald J. Kennedy
Gary D. Sesser
Laura A.Reeds
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Tel: (212) 732-3200
Fax: (212) 732-3232
*Attorneys For Defendant Regalindo Resources Pte Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

SEATREK TRANS PTE LTD.,                          :

                          Plaintiff,             :      08 CIV 00551 (LAP)

                                                 :

        v.                                       :

REGALINDO RESOURCES PTE LTD.,                    :

                          Defendant.             :

------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

        I am over the age of eighteen years, am not party to this proceeding and am

employed as an Assistant Managing Clerk with the law firm of Carter Ledyard & Milburn

LLP. I hereby certify that on the 21st day of March 2008, I caused true and correct copies of

the annexed Reply Memorandum of Law in Support of Regalindo's Motion to Vacate Order

of Attachment to be served by hand upon the following:

                          JEREMY O. HARWOOD
                          Blank Rome LLP
                          The Chrysler Building
                          405 Lexington Avenue
                          New York, New York  10174

6297002.1

-2-

And that in addition to the above, I caused a true and correct copies of the annexed document to be dispatched by Federal Express to the following:

KEVIN L. MCGEE
Rawle & Henderson LLP
The Widener Building
One South Penn Square
Phildadelphia, PA 19107

Antonio Malaspina

6297002.1